MATTHEW MOORE, DOING BUSINESS AS MILLARD MUSIC CENTER, APPELLANT, V. THE HARTFORD FIRE INSURANCE COMPANY, APPELLEE.

481 N.W.2d 196

Filed March 13, 1992.    No. S-89-746.

Jeffrey A. Silver for appellant.

David A. Castello, of Katskee & Henatsch, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is a breach of contract action in which the plaintiff-appellant, Matthew Moore, brought suit alleging that the defendant-appellee, The Hartford Fire Insurance Company, breached its contract to provide burglary coverage for the plaintiff's business, the Millard Music Center. The plaintiff alleges that he requested burglary coverage and that the defendant's agent, Jack Anderson, sold him a policy of insurance which Anderson represented as including burglary insurance. The plaintiff further alleges that the defendant's breach caused him to suffer a loss of inventory and business profits. The defendant answered and moved for a summary judgment, which motion the trial court sustained. The trial court found that the plaintiff did not request burglary coverage and that Anderson was not acting as Hartford's agent in providing the insurance. This appeal followed.

## FACTUAL BACKGROUND

The record reveals that in January 1986 Moore operated a music store out of his home in Omaha, Nebraska. Due to the business' growth, he planned to move out and devote the building exclusively to the business. His accountant recommended that he consult an "insurance specialist" regarding the insurance implications of such a move. As a result, Moore came into contact with Anderson.

At the time, Anderson owned and operated the Skyline Insurance agency. He was an independent insurance agent licensed to sell policies for six different companies, including Hartford. He sold various types of insurance, including property, casualty, life, and health. Regarding his relationship with Hartford, Anderson testified that he worked strictly on a commission basis. He further stated that Hartford did not dictate his business hours, control the customers he solicited, or otherwise direct the manner in which he operated.

Shortly after their initial phone conversation, Anderson

visited Moore at Moore's place of business. At that meeting Moore told Anderson of his desire for burglary insurance to protect his business inventory and for increased liability coverage "in case somebody fell or something" while he was giving music lessons. Anderson then presented Moore with a brochure describing two business insurance plans offered by Hartford. These plans were designated the "standard" plan and the "special" plan, respectively.

According to the brochure, the standard plan protected the owner's business property from losses caused by "fire, lightning, windstorm or hail, explosion, smoke, riot, riot attending a strike or civil commotion, vandalism or malicious mischief, and sprinkler leakage." The special plan, on the other hand, simply provided protection from "all risk." Though Anderson testified that he probably explained to Moore that the "all risk" insurance included burglary coverage, he did not specifically recall discussing that type of coverage. The brochure also listed a series of optional coverages, including "Burglary and Robbery," which were described as applying to the standard plan only. Again, Anderson could not recall whether he discussed these optional coverages with Moore.

Anderson testified that he recommended the special plan because of its "better" coverages, but that Moore chose the standard plan because it was cheaper. Apparently during this same meeting, Anderson completed an application for coverage under the standard plan, with none of the optional coverages included. Either at this meeting or sometime thereafter it was decided that the Hartford policy would cover only the business inventory and not the building because Moore already owned a homeowner's policy covering the building. Moore testified that though he thought it a bit odd to use two insurance companies, Anderson "came across strong and qualified" and he believed Anderson had the expertise to provide the necessary coverages. Anderson submitted the completed application and Hartford issued a policy, which Anderson in turn mailed to Moore.

Moore's business was burglarized on March 23, 1987. After Moore informed him of his losses, Anderson submitted a claim to Hartford on Moore's behalf. Hartford denied the claim

because the policy did not include burglary coverage. This suit followed.

## ASSIGNMENTS OF ERROR

On appeal, Moore argues that the trial court erred in finding that he did not request burglary insurance and in finding that Anderson was not acting as Hartford's agent. Because we agree with the trial court regarding Anderson's relationship with Hartford, it is unnecessary to address the issue of Moore's responsibility for the policy's lack of burglary coverage.

## STANDARD OF REVIEW

Summary judgment is proper when, based upon the pleadings, the evidence in the record discloses that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 475 N.W.2d 901 (1991). On appeal from the grant of a motion for summary judgment, this court views the evidence in the light most favorable to the party against whom the judgment is granted. *Wiles v. Metzger*, 238 Neb. 943, 473 N.W.2d 113 (1991). Here, then, we view the evidence in the light most favorable to Moore.

## INSURANCE "BROKERS"
## VERSUS INSURANCE "AGENTS"

The question of whether an insurance intermediary is an agent of the insured or the insurer is generally one of fact. 3 George J. Couch, Cyclopedia of Insurance Law § 25:94 (rev. 2d ed. 1984); *American Ins. Corp. v. Sederes*, 807 F.2d 1402 (7th Cir. 1986) (applying Illinois law). See *Jelsma v. Scottsdale Ins. Co.*, 231 Neb. 657, 437 N.W.2d 778 (1989) (whether an insurance broker is the insured's agent for receipt of the premium refund upon cancellation is a question of fact). A review of the principles governing classification of an insurance salesman as a "broker" or an "agent" reveals that in applying for and procuring an insurance policy for Moore from Hartford, Anderson was acting as an independent broker and not as an agent of the company.

Nebraska law provides that

> [e]very agent who solicits an application for insurance

of any kind shall in any controversy between the insured or the insured's beneficiary and the company issuing any policy upon such application be presumed to be representing the company and not the insured . . . . Such presumption shall not apply to a broker who is not an appointed agent of the company.

Neb. Rev. Stat. § 44-4004 (Reissue 1988). The Legislature has defined a "broker" as

any individual who acts or aids in any manner in negotiating contracts of insurance, in placing risks, or in soliciting or effecting contracts of insurance as an agent for an insured other than himself or herself and not as an agent of an insurance company or any other type of insurance carrier.

Neb. Rev. Stat. § 44-4002(2) (Reissue 1988). This scheme is somewhat circular, in that it creates a presumption of an agency relationship with the insurer except when the individual is acting as an agent of the insured. Nevertheless, its purpose is clearly to shield insurance companies from liability for the acts of certain insurance intermediaries over whom they do not exercise control sufficient to establish a principal-agent relationship. See Neb. Rev. Stat. § 44-329 (Reissue 1978) (conclusive presumption exists that every agent *or* broker who solicits an application for insurance is an agent of the company issuing the policy in any controversy between the insured and the insurer) (repealed by 1984 Neb. Laws, L.B. 801, and replaced with § 44-4004).

The definition of "broker" in § 44-4002(2) is consistent with the general rule that an insurance intermediary acts as an agent for the insured in submitting an application and procuring a policy. See, 3 Couch, *supra*; *Vina v. Jefferson Ins. Co. of New York*, 761 P.2d 581 (Utah App. 1988). As stated by Professor Couch,

[a]n "insurance broker" is one who acts as middleman between the insured and the insurer, and who solicits insurance from the public under no employment from any special company, and who, upon securing an order, places it with a company selected by the insured, or, in the absence of such a selection, with a company selected by

himself; whereas an "insurance agent" is one who represents an insurer under an employment by it.

3 Couch, *supra*, § 25:93 at 442-43. The mere payment by and acceptance of a commission from the insurer does not constitute control sufficient to establish a relationship of principal and agent between the broker and the company. *Thibodeaux v. Lumbermen's Mut. Cas.*, 448 So. 2d 888 (La. App. 1984). Rather, an insurance salesman who solicits business for more than one company, with no power to bind a specific insurer without its permission, and who is asked by the client to procure coverage from whomever possible at the lowest price, is not the agent of the insurer selected, even if he uses application forms or advertising decals with that insurer's name. *Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199 (5th Cir. 1990) (applying Louisiana law).

When we apply the foregoing principles to the case at hand, it is clear that the trial court correctly found no triable issue as to Anderson's relationship with Hartford. Anderson sold insurance for six different companies, operating out of a business known as the Skyline Insurance agency. Anderson did not work only for Hartford, and that company did not control or direct the manner in which he operated. It is clear that Anderson lacked power to bind Hartford to a policy covering Moore's business property without Hartford's approval. Though he received commissions from Hartford, receipt of commissions alone is not sufficient to establish a principal-agent relationship.

Further, Moore regarded Anderson as an "insurance specialist" capable of choosing from the various companies Anderson represented a policy of insurance suitable for his business needs. That Moore's only preference was for the most cost-effective coverage available, regardless of the provider, is evident from his assent to Anderson's suggestion that he cover the building under his existing homeowner's policy. Though he thought the use of two insurance companies was odd, Moore stated that he agreed to it because he believed Anderson had the expertise to provide the necessary coverages.

The trial court correctly found no genuine issue as to the fact that Anderson, in applying for and procuring an insurance

policy for Moore, acted as an independent broker and not as an agent of Hartford. Because, as a matter of law, the failure of an independent insurance broker to provide coverage requested by a client is not imputable to the insurer issuing the policy, the trial court did not err in granting the defendant's motion for summary judgment. The decision of the trial court is therefore affirmed.

AFFIRMED.