STEVEN M. CHELBERG, APPELLANT, V.
GUITARS & CADILLACS OF NEBRASKA, INC., APPELLEE.
572 N.W. 2d 356

Filed January 23, 1998.   No. S-96-274.

Eugene P. Welch and Francie C. Riedmann, of Gross & Welch, P.C., for appellant.

Robert A. Wichser and Kelly K. Brandon, of Sodoro, Daly & Sodoro, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

McCORMACK, J.

This is a negligence action brought by appellant, Steven M. Chelberg, for personal injuries resulting from a fall he sustained on a tile walkway located on premises owned by Guitars & Cadillacs of Nebraska, Inc. The district court for Douglas County, Nebraska, granted Guitars & Cadillacs' motion for summary judgment. Chelberg filed a motion for new trial which was denied. Chelberg subsequently filed a second motion for new trial based on the discovery of new evidence. This motion was also denied. Chelberg appealed to the Nebraska Court of Appeals, which affirmed the district court's decision in a memorandum opinion filed June 5, 1997. Chelberg then petitioned this court for further review. We reverse the Court of Appeals' upholding of the district court's order and remand the cause for further proceedings.

## I. BACKGROUND

On October 10, 1993, Chelberg was a patron at Guitars & Cadillacs, a country western nightclub located in Omaha, Douglas County, Nebraska. Guitars & Cadillacs had a large dance floor, seating areas, and a tile walkway which circled the dance floor. Guitars & Cadillacs sold beer out of a "beer

trough." This trough was a steel tub filled with ice and bottles of beer, and was located in a recessed area of the club overlapping the tile walkway which circled the dance floor. A customer would tell the bartender what brand of beer the customer wanted, and the bartender would pull out the bottle, dry it off with a towel, open the top, and hand it to the customer. Some customers would pull out the bottles themselves. The beer trough closed at 12:45 a.m. At that time, the bartender loaded the remaining beer bottles into cardboard cases and placed them on a dolly. The loading of the dolly took place in the area where Chelberg fell. The beer was then wheeled to the beer cooler.

During Guitars & Cadillacs operating hours, three floorwalkers were on duty. Floorwalkers are employees of Guitars & Cadillacs who constantly patrol the club cleaning up spills and emptying beer bottles and drinking glasses. The floorwalkers also watch for unruly customers, straighten up tables, and make a sweep of their assigned area every 5 minutes. Jeffrey Ahl, manager of Guitars & Cadillacs, stated that if something was spilled in the club, the floorwalkers or another club employee would have it cleaned up within 5 minutes.

Sometime between 12:55 and 1:25 a.m on October 10, 1993, Chelberg was walking around the dance floor when he came around a corner where the beer trough was located, and his right leg slipped out from under him. He fell, injuring his right knee and back. Chelberg landed in an area of clear liquid which he described as being approximately 2 feet in diameter. The liquid was 4 or 5 feet from the trough, and Chelberg stated that he had not seen the wet area prior to his fall. Chelberg got up, contacted a club employee, and asked to see a manager. The assistant manager, Ken McCluskey, met with Chelberg. McCluskey wiped up the spill and told Chelberg to call for medical attention if he needed it. Chelberg called an ambulance.

Chelberg filed suit against Guitars & Cadillacs in district court, alleging that Guitars & Cadillacs was negligent in placing the trough full of beer and ice adjacent to the dance floor and in selling wet bottles of beer near this floor without any sponge area or bar area over which to work. Guitars & Cadillacs moved for summary judgment, and the court granted its motion,

noting that there was no credible evidence that Guitars & Cadillacs (1) created a condition on the floor where Chelberg fell, (2) knew of the condition, or (3) could have discovered this condition by exercising reasonable care.

Chelberg filed a motion for new trial on January 25, 1996, alleging that the order of the trial court was not supported by the evidence and was contrary to the law. This motion was heard on January 30. On February 5, Chelberg filed a second motion for a new trial based on newly discovered evidence in the form of a witness named "Jeff Nownes." In an affidavit, Nownes stated that he arrived at Guitars & Cadillacs at 12:30 a.m. on October 10, 1993, and observed a water puddle adjacent to the beer trough during his first 10 minutes in the club. Nownes attested that he discussed Chelberg's fall with Chelberg in mid-January 1996. Nownes asked Chelberg if he could talk with Chelberg's attorney to determine whether he could be called as a witness. Chelberg's attorney telephoned Nownes on February 1. Chelberg's attorney attested, through affidavit, that after meeting with Nownes, the decision was made to file the second motion for new trial, which was filed February 5. On February 9, the trial court denied Chelberg's first motion for new trial without comment. On March 4, the trial court denied Chelberg's second motion for new trial, stating that there was no allegation in either affidavit that Chelberg could not with reasonable diligence have discovered and produced the evidence at the previous hearings. Chelberg appealed this decision to the Court of Appeals, assigning as error the district court's (1) granting of summary judgment and (2) failing to grant a new trial based on newly discovered evidence. The Court of Appeals affirmed the district court's decision. It is from this ruling that Chelberg petitions for further review.

## II. ASSIGNMENTS OF ERROR

Chelberg assigns as error the Court of Appeals' (1) ruling affirming the grant of summary judgment in favor of Guitars & Cadillacs, (2) determination that no genuine issue of material fact existed, and (3) determination that no credible evidence existed that Guitars & Cadillacs created the condition on the floor where Chelberg fell.

## III. STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Farmers Union Co-op Ins. Co. v. Allied Prop. & Cas., ante* p. 177, 569 N.W.2d 436 (1997); *Schendt v. Dewey*, 252 Neb. 979, 568 N.W.2d 210 (1997); *Brown v. Wilson*, 252 Neb. 782, 567 N.W.2d 124 (1997).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Tracy v. City of Deshler, ante* p. 170, 568 N.W.2d 903 (1997); *Schendt v. Dewey, supra*; *Cunningham v. Prime Mover, Inc.*, 252 Neb. 899, 567 N.W.2d 178 (1997); *Brown v. Wilson, supra*.

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Farmers Union Co-op Ins. Co. v. Allied Prop. & Cas., supra*; *Tracy v. City of Deshler, supra*.

## IV. ANALYSIS

We note that *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996), abrogates the classifications of invitee and licensee in favor of a standard of care for all those lawfully on the premises of another. Our rule in *Heins, supra*, however, is prospective in application and therefore inapplicable to the instant case.

### 1. STATUS AS INVITEE

An invitee is a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant for their mutual advantage. *Young v. Eriksen Constr. Co.*, 250 Neb. 798, 553 N.W.2d 143 (1996); *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996). It is undisputed that Chelberg was a business invitee.

## 2. DUTY OWED TO INVITEE

A possessor of land is subject to liability for injury caused to a business invitee by a condition on the land if (1) the possessor defendant either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized the condition involved an unreasonable risk of harm to a business invitee; (3) the defendant should have expected that a business invitee such as the plaintiff either (a) would not discover or realize the danger, or (b) would fail to protect himself or herself against the danger; (4) the defendant failed to use reasonable care to protect the business invitee against the danger; and (5) the condition was a proximate cause of damage to the plaintiff. *Blose v. Mactier*, 252 Neb. 333, 562 N.W.2d 363 (1997); *McIntosh v. Omaha Public Schools, supra*; *Cloonan v. Food-4-Less*, 247 Neb. 677, 529 N.W.2d 759 (1995).

The first part of the above test may be met by proving any one of the three subparts, namely that the defendant created the condition, knew of the condition, or would have discovered the condition by the exercise of reasonable care. Summary judgment would not be proper if a material issue of fact had been raised with regard to any of these subparts.

### (a) Knowledge

We first look to the record to determine if a material issue of fact exists as to Guitars & Cadillacs' knowledge of the condition. There was no evidence presented that Guitars & Cadillacs knew of the dangerous condition of the spill prior to Chelberg's accident. None of the depositions, affidavits, or interrogatories allege or confirm that any Guitars & Cadillacs employee had knowledge of the spill. Therefore, no material issue of fact was raised with regard to Guitars & Cadillacs' knowledge of the spill.

### (b) Reasonable Care

We next turn to an examination of the record to determine whether a material issue of fact existed with regard to the reasonable care used by Guitars & Cadillacs to discover the spill. Our case law is clear that in cases involving a slip and fall as a result of a slippery or foreign substance on the floor of a busi-

ness, a plaintiff must establish either actual or constructive notice of the condition which caused the fall. *Cloonan v. Food-4-Less, supra*; *Richardson v. Ames Avenue Corp.*, 247 Neb. 128, 525 N.W.2d 212 (1995). See *Jeffries v. Safeway Stores, Inc.*, 176 Neb. 347, 125 N.W.2d 914 (1964). To constitute constructive notice, a defect must be visible and apparent, and it must exist for a sufficient length of time prior to the accident to permit a defendant's employees to discover and remedy it.

In the instant case, the only evidence submitted at the hearing on Guitars & Cadillacs' motion for summary judgment regarding the time the spill was on the floor was the statement of Guitars & Cadillacs' manager, who explained that floorwalkers would clean up a spill within 5 minutes of its occurrence. Chelberg provided no witnesses or circumstantial evidence as to the amount of time the spill was on the floor. Without such evidence, no material issue of fact can be said to exist with regard to whether Guitars & Cadillacs would have discovered the spill with the exercise of reasonable care.

### (c) Creation of Condition

We now consider Chelberg's principal contention: Guitars & Cadillacs created the dangerous condition of the spill by the use of the beer trough. Chelberg contends that the wet beer bottles' being pulled from the trough without being toweled off to remove excess moisture was enough evidence for the jury to reasonably infer that Guitars & Cadillacs created the spill. Alternately, he claims that the process of removing the bottles from the trough and transporting them to the cooler, again without toweling off the bottles to remove the excess moisture, could reasonably be inferred as causing the spill. The Court of Appeals found that no material issue of fact existed as to whether Guitars & Cadillacs created the spill. We disagree.

The manager of Guitars & Cadillacs testified that they trained employees involved in beer trough sales activity to grab the beer bottle with a towel, wipe off the bottle, and then hand it to the customer. He stated the reason for this procedure is "the bottles are sitting in a tub of ice and when you pull it out of the ice obviously there is water running off of it. So we wipe it down. It's still ice cold inside and it's still going to seep moisture out or the bottle will still sweat a little bit, but the major

amount, the water moisture is wiped off." Giving all reasonable inferences to Chelberg, the fact finder could find that the bottles pulled out of the trough could drip on the floor and create a slippery, wet, and dangerous condition on the tile walkway used by the customers. Then, to allow some of the customers to remove bottles from the trough without wiping them off and, at 12:45 a.m., shortly before Chelberg's fall, take the rest of the bottles out of the trough, again without wiping them off, and load them onto a beer cart parked in the area where Chelberg fell, establishes a question of fact for the fact finder as to whether Guitars & Cadillacs created a dangerous condition. Therefore, because a genuine issue of material fact exists as to whether Guitars & Cadillacs created the condition, the district court erred in granting summary judgment in favor of Guitars & Cadillacs.

Having determined that the district court erred in granting summary judgment in favor of Guitars & Cadillacs, we need not address the issue of newly discovered evidence or the failure of the district court to grant a new trial.

## V. CONCLUSION

We hold that the district court erred in sustaining Guitars & Cadillacs' motion for summary judgment for the reason that there was a genuine issue of material fact as to whether Guitars & Cadillacs created the condition. We, therefore, reverse the Court of Appeals' decision upholding the district court's order and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WHITE, C.J., concurs.