AMISUB (Saint Joseph Hospital), Inc., appellee, v.
Allied Property and Casualty Insurance Company,
defendant and third-party plaintiff, appellant, and
Christopher J. Tinley, third-party defendant, appellee.

576 N.W.2d 493

Filed March 24, 1998.    No. A-96-618.

David D. Ernst and Michael C. Pallesen, of Gaines, Mullen, Pansing & Hogan, for appellant.

Neil B. Danberg, Jr., and Michael S. Degan, of Kennedy, Holland, DeLacy & Svoboda, for appellee AMISUB.

Michael G. Reilly, of Reilly, Petersen, & Hannan, P.L.C., for appellee Tinley.

HANNON, IRWIN, and MUES, Judges.

HANNON, Judge.

In this case, AMISUB (Saint Joseph Hospital), Inc., the operator of Saint Joseph Hospital in Omaha, Nebraska, seeks to enforce a hospital lien it claimed for treatment rendered to Kelly E. Lynam. Lynam was injured in Montgomery County, Iowa, in a collision involving an automobile driven by Dorothy Ann Askey. Both Lynam and Askey are residents of Iowa. Immediately after the collision, Lynam was taken to Saint Joseph Hospital for treatment. AMISUB perfected a hospital lien under Neb. Rev. Stat. § 52-401 (Reissue 1993). Later, Allied Property and Casualty Insurance Company, Askey's liability carrier, paid Lynam the limit of Askey's policy, $25,000, to settle Lynam's claim. AMISUB then brought an action against Allied to enforce its hospital lien. In its answer, Allied alleged that Iowa law controlled and that AMISUB did not have a lien under that law.

Allied also filed a third-party petition against Christopher J. Tinley, Lynam's attorney in the settlement, on the basis that Tinley was liable to Allied under the terms of the settlement agreement. The trial court granted AMISUB's motion for sum-

mary judgment against Allied for the limits of Askey's policy on the basis that Nebraska law, and not Iowa law, controlled. Allied now appeals, arguing that the trial court erred in applying Nebraska law and, in addition, that regardless of which law applied, there were issues of fact which prevented summary judgment. Specifically, Allied points to evidence which shows the possibility that the Iowa Department of Human Services (IDHS) also had a lien against the same funds. Allied also contends that the attorney fees Lynam paid to Tinley to accomplish the settlement should have been deducted from Lynam's recovery and that these are factual questions which prevent summary judgment. We conclude that Nebraska law does apply, that AMISUB is entitled to enforce its lien, and that because Allied did not plead the issues concerning the IDHS' lien or the attorney fees, they were not issues which could properly be considered on a motion for summary judgment. We therefore affirm the court's order sustaining AMISUB's motion for summary judgment.

The trial court also granted Tinley's motion for summary judgment and dismissed Allied's third-party petition because the evidence established that Tinley had filed suit against Allied in Iowa. Allied appeals from this order as well. We conclude that because the pendency of the same action in a court of a different or sovereign jurisdiction does not bar the present action, the judgment of the district court, sustaining Tinley's motion, must be reversed.

## BACKGROUND

Most of the allegations of AMISUB's petition are admitted by Allied's answer. In addition to the corporate organization of the parties, AMISUB alleged that on or about June 2, 1992, Lynam was involved in a motor vehicle collision with Askey at or near Montgomery County, Iowa; that, at the time of the collision, Askey was insured by Allied under a liability insurance policy; that on that same day, Lynam was transported to Saint Joseph Hospital by helicopter, where he sought and received treatment for the injuries received in the collision; that he was discharged from the hospital on June 15; that on September 1, Lynam commenced a lawsuit against Askey in the district court

for Montgomery County, Iowa, to recover for his injuries; that on April 8, 1993 (though the evidence reveals that it actually occurred on April 8, 1994), Lynam and Askey entered into a settlement agreement discharging all claims arising out of the collision; that Lynam dismissed his lawsuit on April 11, 1993 (we assume, due to the above-noted error, that such actually occurred on April 11, 1994); and that Allied paid funds on behalf of Askey to Lynam and Tinley pursuant to the terms of the settlement agreement. By its answer, Allied admitted these allegations.

In addition, AMISUB alleged, and Allied denied, that the reasonable costs of the hospital services, including the helicopter services, rendered to Lynam were $70,551.63; that on September 17, 1992, pursuant to § 52-401, AMISUB notified Lynam in writing that it claimed a lien in the amount of $70,641.83 against any recovery in connection with the injuries sustained from the collision; that on September 22, AMISUB notified Allied of its intent to perfect and enforce a hospital lien in the amount of $70,641.83 against any moneys obtained by Lynam; and that on or about March 3, 1993, AMISUB filed a hospital lien in the district court for Montgomery County, Iowa, in the case pending there. A copy of the notices given to Lynam and Allied and also filed with the Iowa court were attached to AMISUB's petition. Also denied were AMISUB's allegations that Allied had failed and refused to honor AMISUB's hospital lien; that Allied had refused to pay any funds in satisfaction of AMISUB's hospital lien; and that AMISUB is still due $70,551.63.

Besides the admissions and denials referred to in its answer, Allied alleged that chapter 582 of the Code of Iowa, concerning Iowa hospital liens, Iowa Code Ann. §§ 582.1 through 582.4 (West 1992), controlled the outcome of the case and that AMISUB had failed to comply with § 582.2 of that code. These allegations are denied in AMISUB's reply.

On February 7, 1996, Allied filed a third-party petition against Tinley, alleging that in April 1994 it had made a settlement payment to Lynam and Tinley in settlement of Lynam's claim against Askey and that as part of the settlement agreement Lynam and Tinley had agreed to satisfy any claims of AMISUB

relating to Lynam's medical treatment. Allied further alleged that as a result of Tinley's failure to satisfy AMISUB's lien, AMISUB had filed suit against Allied, causing it to incur legal expenses in defending the action. Allied alleged that if AMISUB prevailed in its suit, Allied was entitled to reimbursement from Tinley. Allied prayed for judgment against Tinley in the amount of any judgment entered against Allied, together with costs and attorney fees.

In his answer, Tinley admitted all of the allegations of Allied's third-party petition except (1) that he had agreed to satisfy any claims or liens of AMISUB and (2) that as a result of his failure to satisfy AMISUB's lien, Allied had incurred costs, attorney fees, or liability to AMISUB.

Both AMISUB and Tinley moved for summary judgment. Tinley based his motion on the fact that before Allied had made him a third-party defendant he had filed a petition for declaratory judgment against both Allied and AMISUB in Iowa. On April 17, 1996, a hearing was held on both motions.

The evidence offered at the summary judgment hearing consisted of five exhibits. The first was the deposition of Tinley concerning his personal and professional relationships in Omaha. We are unable to find any relevant information in that exhibit. The second was the affidavit of Greg Barry, patient accounts manager at Saint Joseph Hospital. That document established that the cost of services that Lynam had incurred at Saint Joseph Hospital was as alleged in AMISUB's petition and that such costs were fair, reasonable, and still unpaid. It further established that AMISUB had sent individual notices of its lien to Lynam, Tinley, and the Iowa court where Lynam had filed suit against Askey. Copies of these notices were attached to Barry's affidavit.

The third exhibit was entitled "Release of Claims" and was signed by Lynam and "approved and agreed to" by Tinley. The document, dated April 8, 1994, generally purported to be a release of all of Lynam's claims against Askey arising from the collision. The document states a consideration of $31,000 plus court costs. It also contains covenants by Lynam, and possibly by Tinley. Such covenants will be set forth in detail later in this opinion when the issues applicable to them are discussed.

Exhibit 4 was Tinley's affidavit. In that affidavit, Tinley stated that the policy limits on the Allied policy covering Askey were $25,000 and that this amount was paid to Lynam in settlement of his claim. Tinley also stated that as a result of medical expenses incurred by Lynam arising out of the June 2, 1992, collision, the IDHS, "under Title XIX," had paid medical providers direct payments in excess of $20,000. Tinley opined that pursuant to Iowa Code Ann. § 249A.6 (West Supp. 1989), the IDHS had a lien against all monetary claims Lynam had against third parties.

Tinley further stated that Lynam and Askey were residents of Montgomery County, Iowa; that Lynam's cause of action filed against Askey was filed in that county; and that, pursuant to Iowa law, only an Iowa hospital could enforce an Iowa lien in the State of Iowa. Tinley attached copies of what he regarded as the applicable Iowa law.

Later, by agreement of the parties, the court received exhibit 5, entitled "Motion for Separate Adjudication of Law Points Pursuant to Iowa Rule of Civil Procedure 105." The document reveals that it was filed by Tinley in his suit against Allied and AMISUB in Pottawattamie County, Iowa, on April 18, 1996. Attached to the document is part of Tinley's petition for declaratory judgment.

## TRIAL COURT'S ORDER

In an order dated and filed on May 16, 1996, the court found that Nebraska law governed issues relating to the attachment and perfection of hospital liens for hospital services rendered by a Nebraska hospital. The court also found that there was no genuine issue of material fact, that AMISUB had perfected its lien pursuant to § 52-401, and that Allied had impaired that lien. The court thus granted AMISUB's motion for summary judgment against Allied in the amount of $25,000 and taxable costs.

The court further found that because Tinley had instituted proceedings in Iowa involving the same issues prior to being named as a third-party defendant, Allied's petition should be dismissed pending resolution of the Iowa litigation. The court thus granted Tinley's motion for summary judgment of dismissal.

## ASSIGNMENTS OF ERROR

Allied appealed from the granting of summary judgment both in favor of AMISUB and in favor of Tinley. It contends that the court erred (1) in applying Nebraska law, (2) in sustaining AMISUB's motion for summary judgment, and (3) in sustaining Tinley's motion for summary judgment.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Chelberg v. Guitars & Cadillacs*, 253 Neb. 830, 572 N.W.2d 356 (1998).

■ When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Johnson v. School Dist. of Millard*, 253 Neb. 634, 573 N.W.2d 116 (1998).

## ANALYSIS

*Applicable Hospital Lien Laws.*

Nebraska's hospital lien law is codified at § 52-401. Although § 52-401 was amended in 1995 by L.B. 172, effective September 9, 1995, see § 52-401 (Supp. 1995), the provisions applicable to the instant case are those contained in § 52-401 (Reissue 1993), which provides:

> Whenever any person shall employ a physician, nurse, or *hospital* to perform professional service or services of any nature, *in the treatment of or in connection with an injury,* and such injured person shall claim damages from the party causing the injury, such physician, nurse, or hospital, as the case may be, *shall have a lien upon any sum awarded the injured person in judgment or obtained by settlement or compromise* on the amount due for the reasonable value of services necessarily performed . . . . In order to prosecute such lien, it shall be necessary for such physician, nurse, or hospital to *serve a written notice upon the person or corporation from whom damages are claimed* that such physician, nurse, or hospital claims a

lien for such services and stating therein the amount due and the nature of such services, *except that whenever an action is pending in court for the recovery of such damages, it shall be sufficient to file the notice of such lien in the pending action.*

(Emphasis supplied.)

█ Under § 52-401, the hospital lien attaches upon admission of the patient to the hospital for treatment. *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 475 N.W.2d 901 (1991). The Nebraska Supreme Court has compared the hospital lien statute to the attorney lien statute, Neb. Rev. Stat. § 7-108 (Reissue 1997), wherein the notice requirement is designed to prevent a bona fide settlement of the controversy by the litigants and payment by the debtor to the creditor in ignorance of the attorney's rights. *West Neb. Gen. Hosp. v. Farmers Ins. Exch., supra.*

█ The hospital's lien is enforceable as against the injured party upon attachment, regardless of whether the hospital complies with the statute's notice provisions. *Id.* Perfection, on the other hand, is required if the hospital seeks to enforce the lien against third parties, such as the tort-feasor. *Id.* Any settlement reached is not between the injured party and the insurer, but between the injured party and the tort-feasor. *Id.* The fact that the insurer writes the check is the result of an independent contractual arrangement and does not alter this basic structure. *Id.* Because the hospital lien statute creates a lien against the proceeds of a settlement, regardless of where the tort-feasor gets the money to pay that settlement, the tort-feasor is generally the party against which the hospital must assert its lien. *Id.* However, upon perfection of a lien by a hospital, a duty arises on the part of the tort-feasor's insurer not to impair the hospital's rights under that lien. *Id.* If such an insurer settles directly with the injured party despite the existence of a perfected hospital lien, it has breached that duty and is liable directly to the hospital. *Id.* For a general discussion of hospital lien statutes, see Annot., 16 A.L.R.5th 262 (1993).

Iowa's hospital lien statutes are quite similar to Nebraska's and appear to have the same net effect. See Iowa Code §§ 582.1 through 582.4. However, the Iowa law, specifically § 582.1,

provides for liens to those entities "maintaining a hospital in the state." In order for such lien to be effective, the hospital must file written notice of the claim, containing specified information, with the clerk of the district court of the county where the hospital is located. § 582.2. The hospital must also send a copy of the notice to the party alleged to be liable to the injured party and to that party's insurance carrier. *Id.* The Iowa statutes require the clerk of the district court to keep a hospital lien docket, see § 582.4, and provide for the enforcement of the lien against the party owing the injured party in the event the injured party is paid without satisfaction of the lien. § 582.3.

Also attached to Tinley's affidavit are photocopies of the 1994 version of §§ 249A.5 through 249A.12 of the Iowa Code, which are statutes that generally allow the State of Iowa to recover medical assistance benefits that it paid to or on behalf of its citizen(s), from the party or parties liable to the person receiving the assistance. At the time of the accident, the effective statutes were Iowa Code Ann. §§ 249A.5 through 249A.12 (West 1985 & Supp. 1989). The most significant of those statutes is § 249A.6, which provided:

> 1. When payment is made by the department for medical care or expenses through the medical assistance program on behalf of a recipient, the department is subrogated, to the extent of those payments, to all monetary claims which the recipient may have against third parties. A compromise, including but not limited to a settlement, waiver or release, of a claim to which the department is subrogated under this section does not defeat the department's right of recovery except pursuant to the written agreement of the director or the director's designee or except as provided in this section. A settlement, award, or judgment structured in any manner not to include medical expenses or an action brought by a recipient or on behalf of a recipient which fails to state a claim for recovery of medical expenses does not defeat the department's right of subrogation if there is any recovery on the recipient's claim unless the claim for recovery of medical expenses is barred by an applicable statute of limitations, or the legal representative of the medical assistance recipient does not

represent the person or persons who have legal standing to bring the claim for recovery of medical expenses. In such situations, the legal representative shall notify the department of the situation; the department may then notify the person or persons having legal standing to bring the claim of the right to proceed with the claim against the third-party tort-feasor. Should the person or persons elect not to proceed, the department may then proceed in a separate action with a claim to recover its subrogation interest.

. . . .

3. The subrogation rights of the department are valid and binding on an attorney, insurer, or other third party only upon notice by the department or unless the insurer or third party has actual notice that the recipient is receiving medical assistance from the department . . . .

We understand that pursuant to this section the IDHS would hold any lien upon Lynam's monetary claim against Askey that the State of Iowa might be entitled to.

*Choice of Law.*

Allied argues that summary judgment should not have been granted to AMISUB because (1) Iowa law controls and AMISUB is not entitled to a lien under Iowa law because it does not operate a hospital in Iowa, as well as other reasons, and (2) the possible lien of the IDHS and the attorney fees and costs Lynam paid to Tinley to collect the settlement, which would decrease the amount AMISUB would be entitled to recover, both create issues of fact. For purposes of this opinion, we assume that if Iowa law applies, AMISUB cannot prevail.

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Chelberg v. Guitars & Cadillacs*, 253 Neb. 830, 572 N.W.2d 356 (1998).

The controlling question in this case is whether Nebraska law is effective to give AMISUB a hospital lien in view of the several real or imagined connections with Iowa. Allied contends that the salient facts controlling the outcome of this issue are that Lynam and Askey were residents of the State of Iowa, that

the collision occurred in Iowa, that Lynam filed his action against Askey in Iowa, and that the release was executed in Iowa. Allied ignores the facts that Lynam was treated by AMISUB while he was in Nebraska, that AMISUB is a Nebraska corporation, and that Allied is licensed to transact business in Nebraska.

It is undisputed that Lynam, an injured person, employed AMISUB, a Nebraska hospital, to render professional services for the injuries he received in the June 2, 1992, collision. It is further undisputed that Lynam had a claim against the person causing the injury, Askey, and that AMISUB gave the required notice of its lien to Askey and to Allied, as well as to the Iowa court where Lynam's suit was pending. If Nebraska law does then apply, it is clear that AMISUB had a lien on the proceeds of the settlement.

A similar situation arose in *Travelers Indem. Co. of Illinois v. Moore*, 642 F. Supp. 1119 (C.D. Ill. 1986). In *Moore*, the victim was injured in an explosion in Illinois and, after initial treatment in Illinois, was transferred to the burn unit of the Washington Hospital Center in the District of Columbia. The victim eventually died, and the Washington hospital filed a hospital lien pursuant to the District of Columbia Code. Suit was filed in Illinois federal court, and the issue presented to the court was whether it should enforce the hospital's lien, which arose under the District of Columbia law, against the proceeds of an Illinois wrongful-death claim.

The *Moore* court, relying on Illinois law, applied the Restatement (Second) of Conflict of Laws § 188 at 575 (1971), which concerns conflict of laws in contract actions, to determine which law to apply, as follows:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties . . . the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Under the Restatement, *supra*, § 6(2) at 10, when there is no statutory directive of its own state on choice of law, the court considers

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

The *Moore* court applied the Restatement, *supra*, § 188, because it found that the lien arose from an implied contract between the hospital and the party receiving its medical services. Since that contract was performed in the District of Columbia, the court found that, under subsection (2), factors (a) through (d) weighed in favor of the application of the District of Columbia law to the question of the enforceability of the lien. The court also noted that factor (e) pointed to both Illinois and the District of Columbia. The court concluded that

because the statutory framework of both states is similar and the results under each statute are precisely identical, the policy arguments raised by the parties do no more than weigh equally in favor of application of either state's law.

> It is this Court's view that the other factors articulated by § 188 and § 6 weigh in favor of applying D.C. law to the issue of the enforcement of the hospital's lien.

642 F. Supp. at 1127.

We agree with the *Moore* court that the rendering of hospital services creates an implied contract between the hospital and the person being given medical care. It is this contract and not, as Allied contends, the release that is to be analyzed under the Restatement, *supra*, § 188. We now apply this same analysis, noting that § 188 was adopted by the Nebraska Supreme Court in *Powell v. American Charter Fed. Sav. & Loan Assn.*, 245 Neb. 551, 514 N.W.2d 326 (1994).

■ As in *Moore*, factors (a) through (d) weigh in favor of the application of Nebraska law because the hospital services upon which the lien is based were performed in Nebraska and factor (e) suggests either state. We conclude that the Restatement, *supra*, § 188, has the effect of providing that a lien that has been perfected under the law of the state where the hospital service was rendered constitutes a valid lien upon any award, judgment, or settlement, regardless of where the event which caused the injury occurred or of the residence of the injured party or the party causing the injury. Because the laws of both states are similar and because Nebraska has the most significant relationship to the formation of the contract, we conclude that the district court did not err in applying Nebraska law.

It is clear that AMISUB had a cause of action against Lynam, which it had the right to enforce in Nebraska. AMISUB's lien attached when AMISUB rendered services to Lynam and became perfected before Allied paid the $25,000 to Lynam. The fact that Lynam left Nebraska before AMISUB perfected its lien is irrelevant.

Allied also argues that Nebraska's hospital lien law does not have extraterritorial effect. However, Allied supplies no authority to support its assertion. In the above holding, we are concluding that the Nebraska lien law effected the right, that is, Lynam's cause of action against Askey, when he was present in Nebraska. It seems obvious that any state may effect the rights of a person present in that state and that the state of residence, or the state where a person's cause of action arises, cannot insu-

late that person from the effect of reasonable laws of the state in which a person is located when the legal right is effected. The facts are that Iowa, and we suspect practically every state, has a hospital lien law to protect its hospitals and that such laws are reasonable, necessary, and desirable.

*Genuine Issues of Material Fact?*

Allied argues that AMISUB would not be entitled to summary judgment in the face of the IDHS' lien and in the face of a deduction for the attorney fees that Lynam paid to Tinley to collect the settlement from Allied and Askey. In our discussion, we assume, without deciding, that if the issues were properly pled and proved, they either would have prevented summary judgment, unless AMISUB offered evidence sufficient to establish that Allied's claims were ineffective, or would have, at least, required judgment in a lesser amount. We now combine these issues for discussion because the outcome on both issues is controlled by the same legal principle, that is, that Allied failed to plead either defense in its answer.

In its answer, Allied admitted certain facts and denied others and, as affirmative defenses, alleged that the Iowa hospital lien law, chapter 582 of the Iowa Code, controlled; that AMISUB failed to comply with Iowa Code § 582.2 regarding hospital liens; and that the petition did not state a cause of action. These defenses raised the legal issue discussed above, namely, which state's law controlled, as distinct from the affirmative defenses Allied now raises on appeal. We observe that there are no allegations regarding the Iowa law on the IDHS' liens or any other applicable law and no allegations of any facts which, if true, would give the IDHS a lien under Iowa law. While Nebraska courts take judicial notice of the law of sister states pursuant to the Uniform Judicial Notice of Foreign Law Act, see Neb. Rev. Stat. §§ 25-12,101 to 25-12,107 (Reissue 1995), this act does not remove the necessity of pleading and presenting the common law or statutes of other jurisdictions, *Scott v. Scott*, 153 Neb. 906, 46 N.W.2d 627 (1951).

The applicable Iowa statute was presented by Tinley's affidavit, though we note that both the trial court and this court could have taken judicial notice of the statute had it been pled.

However, as discussed above, Allied did not plead any facts which would have given the IDHS a lien. Such facts as are required by the Iowa statute to give the IDHS a lien would naturally be necessary to state a defense: facts such as that the IDHS paid for or provided medical services to Lynam for the injuries he received in the collision and that Allied filed a notice of lien with the clerk of the district court for Montgomery County, Iowa, and with Lynam's attorney before the settlement, as well as other facts which are required under Iowa law to perfect the lien. Allied also did not plead any fact concerning attorney fees and costs paid by Lynam to Tinley in obtaining the settlement. The effect of the failure to plead these issues is dispositive.

When we inquired of Allied's counsel at oral argument about the significance of the lack of pleadings on this issue, he stated that it was of no effect because it is well known that a motion for summary judgment is not intended to be a substitute for a motion to dismiss, a demurrer, or a motion for judgment on the pleadings. See *Regnev, Inc. v. Shasta Beverages*, 215 Neb. 230, 337 N.W.2d 783 (1983). Summary judgment is improper when the challenge involves the sufficiency of a petition to state a cause of action. *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993). Perhaps such cases as cited above would be authority if we were considering the sufficiency of a pled affirmative defense, but they are not authority where the issue is whether upon a motion for summary judgment the defendant may have the benefit of a possible defense that was not pled.

As discussed below, the cases we find hold that when the plaintiff is entitled to a summary judgment on the issues pled in the petition, the only affirmative defenses that can prevent such a summary judgment are those which are pled by the defendant. The general approach is that "[s]ummary judgement is proper when, based upon the pleadings, the evidence in the record discloses that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Moore v. Hartford Fire Ins. Co.*, 240 Neb. 195, 198, 481 N.W.2d 196, 199 (1992). On the issue before us, the significance of that statement is the phrase "based upon the pleadings." The purpose of pleadings is to frame the issues upon which a cause is to be

tried, and the issues in a given case will be limited to those which are pled. *Buffalo County v. Kizzier*, 250 Neb. 180, 548 N.W.2d 757 (1996). As an example, "[i]n an action on a promissory note in which defendants fail to plead affirmative defenses, such as lack of consideration or any other defense that would controvert the amount due, no issue of fact is presented for determination and plaintiff is entitled to summary judgment." *Pabst v. First American Distrib., Inc.*, 222 Neb. 591, 594, 386 N.W.2d 422, 424 (1986).

In *Columbus Bank & Trust Co. v. High Country Stable*, 202 Neb. 724, 277 N.W.2d 81 (1979), the plaintiff sued on a promissory note and under the above rule was entitled to summary judgment unless the defendants pled a defense. The trial court concluded that the plaintiff was entitled to summary judgment. On appeal, the defendants argued that certain statements in the deposition of one of the defendants could be construed as justification for inferring that certain partnership funds had been wrongfully commingled, as well as other possible defenses, and that such created a factual issue as to the amount due on the note. In affirming the judgment of the trial court, the Supreme Court said:

> Defendants failed to plead payment, partial payment, wrongful acts, fraud, want of authority, or any other defense that would contravert plaintiff's allegation of amount due. Such defenses must be affirmatively pleaded in order to be available to defendants. Not being pleaded, no issue of fact is presented for determination.

*Id.* at 726, 277 N.W.2d at 82.

*Cass Constr. Co. v. Brennan*, 222 Neb. 69, 382 N.W.2d 313 (1986), is another example of the importance the Supreme Court has attached to the pleading of an affirmative defense in order to have that defense available on a motion for summary judgment. In *Cass Constr. Co.*, the court considered and determined on a motion for summary judgment whether the Uniform Commerical Code had altered the common-law doctrine of accord and satisfaction. For our purposes, the significance of the case is that the *Cass Constr. Co.* court stated that before it could consider the underlying issue, it had to determine whether the defendants had sufficiently pled accord and

satisfaction as an affirmative defense. It cited and quoted from Neb. Rev. Stat. § 25-811 (Reissue 1995), which has remained the same since 1867 and provides, "The answer shall contain . . . a statement of any new matter constituting a defense, counterclaim or setoff, in ordinary and concise language, and without repetition." We conclude that the clear import of the holdings of the above cases is that upon a motion for summary judgment, a defendant cannot have the benefit of a possible affirmative defense that is not pled in the answer.

As Allied failed to properly plead the existence and effect of the IDHS' lien or the attorney fees paid by Lynam as defenses in its answer, we will not address them on appeal. In making this ruling, we assume, but do not decide, that the attorney fees Lynam paid would be deductible. See § 52-401 and *In re Guardianship & Conservatorship of Bloomquist*, 246 Neb. 711, 523 N.W.2d 352 (1994), for authority that would imply that result. As a result, there is nothing which prevents judgment in favor of AMISUB. The order of the district court is therefore affirmed.

*Tinley's Motion for Summary Judgment.*

Allied also argues that the court erred in granting Tinley's motion for summary judgment on the grounds that before Allied made Tinley a party to the lawsuit, Tinley filed an action in Iowa governing the same issues which was still pending at the time of the hearing. Evidence of the Iowa action is found in exhibit 5, as well as attached to Tinley's motion to dismiss Allied's petition.

Allied's action against Tinley is based upon the April 8, 1994, settlement agreement which was signed by Lynam and "approved and agreed to" by Tinley and which purported to release and discharge all of Lynam's claims against Askey resulting from the collision. Allied attempts to hold Tinley liable under the covenant which provided that there were no third parties which would be entitled to subrogation, indemnity, or reimbursement of medical payments except AMISUB and the State of Iowa "which will be satisfied from the trust account of the attorney for the undersigned." Tinley's signature creates the possibility that he might be held liable under such provision

of the release. However, for the reasons discussed below, we need not reach such issue.

■ In *Miller v. Miller*, 213 Neb. 219, 328 N.W.2d 210 (1982), the petitioner brought an action for dissolution of marriage in Nebraska. On the ground that the parties were also parties to a dissolution of marriage action pending in California which had not become final, the court sustained the respondent's demurrer and dismissed the petition. On appeal, the Nebraska Supreme Court reversed, concluding:

> The two actions involved here, however, are not in the same court; indeed, they are pending in courts of different and sovereign jurisdictions. The general rule that pendency of a prior action between the same parties for the same cause may be pled in abatement of a subsequent action will not be sustained where the prior action is pending in a court of a foreign or different jurisdiction. [Citations omitted.] It must be concluded, therefore, that the pendency of the California action does not bar the present action and the demurrer ought not have been sustained, nor the petition dismissed.

*Id.* at 222, 328 N.W.2d at 211. The resulting rule is that when the same cause of action, involving the same parties, is pending in courts of different and sovereign jurisdictions, the actions may proceed independently of each other. *Id.* See, also, *VanDeWalle v. Albion Nat. Bank*, 243 Neb. 496, 500 N.W.2d 566 (1993) (applying federal law, between two actions pending at same time, first of two judgments announced has preclusive effect). Thus, the district court erred in sustaining Tinley's motion for summary judgment. As such, that judgment is reversed.

## CONCLUSION

The judgment of the district court sustaining AMISUB's motion for summary judgment is affirmed, and the judgment sustaining Tinley's motion is reversed.

AFFIRMED IN PART, AND IN PART REVERSED.