IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

PITCHER V. WAL-MART STORES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TONYA PITCHER AND ROBERT PITCHER, APPELLANTS,
V.
WAL-MART STORES, INC., A DELAWARE CORPORATION, APPELLEE.

Filed November 10, 2014.    No. A-13-997.

Appeal from the District Court for Lancaster County: STEPHANIE F. STACY, Judge. Affirmed.

James L. Haszard, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., L.L.O., for appellants.

George E. Martin III and Ryan D. Wilkins, of Baird Holm, L.L.P., for appellee.

MOORE, Chief Judge, and IRWIN and PIRTLE, Judges.

MOORE, Chief Judge.

Tonya Pitcher and Robert Pitcher brought a negligence action against Wal-Mart Stores, Inc. (Wal-Mart), for personal injuries Tonya suffered after she slipped and fell inside a Wal-Mart store in Lincoln, Nebraska. The district court for Lancaster County granted Wal-Mart's motion for summary judgment. The Pitchers appeal, arguing that there was an issue of fact as to whether Wal-Mart created the wet floor on which Tonya slipped or whether Wal-Mart took reasonable care to discover the wet floor. Finding no merit to the Pitchers' arguments, we affirm the district court's order.

FACTUAL BACKGROUND

On April 17, 2011, Tonya, Robert, and two of their children were shopping in a Wal-Mart store located in Lincoln. While in the store, Tonya took her son into the restroom located at the front of the store. After leaving the restroom, Tonya slipped and fell on the store's floor. She hit her left knee against the floor and suffered a broken kneecap.

The Pitchers brought a premises liability action against Wal-Mart. In their operative complaint, they alleged that Tonya slipped and fell in Wal-Mart due to water or another slippery substance on the floor. The Pitchers asserted that Wal-Mart knew of the condition of the floor or that Wal-Mart, by the exercise of reasonable care, would have discovered the condition. The Pitchers further alleged that Tonya suffered injuries which caused physical pain and mental suffering, loss of enjoyment of life, inconvenience, and past and future disability. Finally, Robert claimed that he suffered a loss of consortium as a result of Tonya's injuries.

Following discovery, Wal-Mart moved for summary judgment. Wal-Mart argued that there was no evidence to establish how or when the condition on the floor was created which caused Tonya to slip. Wal-Mart submitted evidence in support of its position, including excerpts from depositions of Tonya, Robert, and Jacqueline Bauer, an assistant manager at Wal-Mart. In addition, Wal-Mart submitted video surveillance footage of the areas related to Tonya's fall.

During her deposition, Tonya testified that she had taken their son to the restroom while Robert and their daughter were going through the checkout with their merchandise. While walking to the restroom with their son, Tonya did not notice any water on the ground. She testified that her feet began to slip when she left the restroom. Tonya believed that she was slipping for 30 seconds to a minute before she fell down. Tonya estimated that 10 minutes had passed between the time she walked across the floor to get to the restroom and when she fell.

Tonya testified that after she fell, she heard people around her discussing the cause of her fall. She stated that another customer named "Shelly" claimed that there was water on the floor leading out the door and that the water had caused the fall. Tonya also claimed that she heard Robert tell Bauer, who responded to the incident, that she might want to clean up the water on the floor before somebody else falls and gets hurt. Tonya did not personally observe any water on the floor, but she testified that the emergency responders told her that her jeans were wet. Tonya did not have any information that anyone from Wal-Mart was aware that water was on the ground before she fell.

Robert testified during his deposition that he and their daughter were sitting on a bench near the restrooms for 5 or 6 minutes before Tonya fell. While he was sitting on the bench, Robert did not observe any water spill onto the floor. After watching Tonya fall, Robert went over and knelt beside her. While kneeling, he observed a trail of water on the floor, approximately 6 inches wide, coming out of the area surrounding register No. 13 (Register 13). He testified that the trail of water continued on the floor through the west exit. Robert did not know how this water got onto the floor nor could he state whether anybody at Wal-Mart was aware of the water on the floor before Tonya's fall.

Bauer responded to Tonya's fall and completed an inspection of the nearby floor area. During her deposition, Bauer testified that Tonya fell in one of the areas Wal-Mart refers to as an "action alley." An action alley is a big walk space where there is a substantial amount of customer traffic. Bauer testified that during her inspection of the area, she found some drops of water on the floor that led back to Register 13. She estimated there was "maybe a fourth of a cup [of water] total" on the floor. Bauer also added that another Wal-Mart associate informed her that a customer had purchased refillable water bottles at Register 13 prior to Tonya's fall. Bauer spoke with the cashier at Register 13, who informed her that he did not observe any water spillage. Bauer testified that she did not discover any water puddles at Register 13.

Bauer explained that Wal-Mart offers customers the opportunity to purchase water from a Culligan machine in the back of the grocery section of the store. At this station, customers are able to fill bottles with water. Customers are permitted to refill their own bottles or purchase bottles to fill in the store. The nature of the cap on the bottles varies depending on whether customers are purchasing a Wal-Mart bottle or refilling their own bottles. At checkout, the Wal-Mart cashiers are able to type a code into the register to record a customer's purchase of the water. Prior to Tonya's fall, Bauer was not aware of any bottles leaking. Wal-Mart's system for selling this water has remained the same following Tonya's incident.

Bauer also testified that Wal-Mart policy is to have its associates conduct regular "safety sweeps" of store aisles. These safety sweeps involve pushing dry brooms while walking down aisles and looking for anything hazardous on the floor. Although maintenance associates typically perform the safety sweeps, Bauer testified that all employees are supposed to keep their eyes open for potential hazards on the store floor. Bauer also stated that Wal-Mart has weekly safety meetings which occur each Monday at 1:30 p.m.

Video footage from Wal-Mart's surveillance system was also introduced into evidence. The video contains footage from three different vantage points: an eastward view of the action alley in which Tonya fell, a westward view of the same action alley, and an overhead view of Register 13. The footage from the cameras facing the action alley shows the aisle before Tonya's fall, Tonya's falling, and the subsequent medical care she received. The footage from the camera above Register 13 depicts the cashier scanning some refillable water containers from a couple's shopping cart and entering a code into the cash register. The footage of the action alley also shows the couple who purchased the water exiting the store. Approximately 30 seconds before Tonya fell, this couple walked on the same path as the trail of water droplets Bauer discovered after the incident.

On October 31, 2013, the district court entered an order granting Wal-Mart's motion. The court concluded that the Pitchers had not adduced the evidence necessary to show that Wal-Mart created, knew about, or reasonably should have known about the presence of the water droplets upon which Tonya had slipped.

The Pitchers appeal.

## ASSIGNMENTS OF ERROR

Pitcher assigns that the court erred in (1) sustaining Wal-Mart's motion for summary judgment, (2) determining that no genuine issue of material fact existed, and (3) determining that Wal-Mart was entitled to judgment as a matter of law.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Payne v. Nebraska Dept. of Corr. Servs.*, 288 Neb. 330, 848 N.W.2d 597 (2014). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that

party the benefit of all reasonable inferences deducible from the evidence. *Latzel v. Bartek*, 288 Neb. 1, 846 N.W.2d 153 (2014).

ANALYSIS

Owners and occupiers of land are not insurers of their premises, and they have a duty only to exercise reasonable care in the maintenance of their premises. See *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996). In premises liability cases, the owner or occupier is subject to liability if the lawful visitor proves (1) the owner or occupier either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the defendant should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the owner or occupier failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the lawful visitor. *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004); *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003).

The Pitchers argue summary judgment is improper in this case because they claim there are genuine issues of fact as to whether Wal-Mart created the slippery condition on the floor which caused Tonya's fall. The Pitchers also assert that there is an issue of fact as to whether Wal-Mart took reasonable care to discover the condition on the floor.

The Pitchers claim that Wal-Mart's method of selling refillable water in its store creates a hazardous situation in the store. They point to the fact that Wal-Mart allows unsupervised customers to fill and cap the bottles and does not have its employees check the bottles for leakages during the checkout process. The Pitchers cite to the Nebraska Supreme Court's decision in *Chelberg v. Guitars & Cadillacs*, 253 Neb. 830, 572 N.W.2d 356 (1998), to support their claim. In *Chelberg*, a patron of a nightclub brought a personal injury action against the nightclub after slipping and falling near the nightclub's beer trough which was located near the dance floor. The Nebraska Supreme Court reversed this court's decision to affirm the district court's grant of summary judgment against the patron. The Supreme Court held that there was a material issue of fact as to whether the nightclub created a dangerous condition by utilizing a beer trough from which beer bottles, immersed in ice, would be taken and sold to patrons. The court noted that the evidence showed that the nightclub had allowed customers to take bottles from the trough themselves without first having the bottles wiped and that nightclub employees also removed bottles from the trough without wiping them. Employees also acknowledged that the beer trough would seep and the bottles would sweat. Based on that evidence, the court concluded that a finder of fact could infer that the nightclub created the dangerous condition through the actions of its employees.

We conclude that the evidence in this case is dissimilar to that in *Chelberg*. In this case, the location of the water equipment is not near the location where Pitcher's fall occurred. Further, there is no evidence that Wal-Mart's system of selling refillable water created the actual condition on the floor at the time of Pitcher's fall.

The present case is similar to *Derr v. Columbus Convention Ctr.*, 258 Neb. 537, 604 N.W.2d 414 (2000). In that case, a hotel guest slipped on ice that had been spilled on stairs

located near an ice machine that the hotel provided for guest use. In response to the hotel's motion for summary judgment, the guest was not able to provide evidence that the hotel employees were actively involved in spilling the ice or that the hotel was aware of the spill. The Nebraska Supreme Court rejected this court's determination that the evidence could support the conclusion that the hotel created a dangerous condition merely by placing an ice machine near the foot of the stairs and not establishing a regular schedule for inspecting that area. Instead, the Supreme Court concluded the hotel's uncontroverted evidence, that its employees inspected the area where the fall occurred several times a day, that its employees were trained to detect and respond to hazardous conditions, and that there had been no previous similar accidents on hotel premises, entitled the hotel to summary judgment. Similarly, based on the evidence presented in this case, a finder of fact could not reasonably infer that Wal-Mart created the hazard which caused Tonya's injury. There was no evidence that leakage had ever occurred at this store as a result of Wal-Mart's water equipment or the system of allowing customers to refill containers. There is simply nothing in the record to show that Wal-Mart or its employees caused the slippery condition on the floor.

We also conclude that there is no issue of fact as to whether Wal-Mart should have known of the slippery condition of the floor. Neither Tonya nor Robert was able to testify to the source of the clear liquid in which Tonya slipped, how long the liquid had been on the Wal-Mart store floor before Tonya's fall, or that anyone associated with Wal-Mart knew or should have known of the clear liquid on the floor before the fall. There was no evidence that this liquid was visible or had existed for a sufficient length of time for Wal-Mart to discover and remedy the situation. Additionally, Wal-Mart presented evidence of its safety procedures which include consistent safety sweeps. The video evidence shows that a couple purchased refillable water from Register 13 shortly before Tonya's fall. After passing through the cash register area, the couple passed through the approximate area where Pitcher slipped and fell about 30 seconds before the incident. Although the video gives a possible inference that the clear liquid on the floor was spilled from this couple's containers of water, there was not sufficient time for Wal-Mart to discover the condition on the floor because Pitcher fell approximately 30 seconds after the video showed that this couple passed through the action alley. Further, Wal-Mart presented evidence that the cashier at Register 13 who handled the couple's transaction did not observe any leaking water. See *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003) (grocery store was entitled to summary judgment after establishing by uncontroverted evidence that no one knew how long the water had been on the floor and there was no evidence or reasonable inference that the grocery store created the condition, knew of the condition, or should have known of the condition).

We conclude the Pitchers failed to adduce any evidence which would permit a fact finder to infer that Wal-Mart was liable for not having discovered the clear liquid on the floor and remedying the condition prior to Tonya's fall. The district court was correct in granting summary judgment in favor of Wal-Mart.

## CONCLUSION

The Pitchers failed to produce any evidence to establish that Wal-Mart created, knew about, or should have known about the clear liquid on the floor prior to Tonya's fall. We affirm the district court's order granting Wal-Mart summary judgment.

AFFIRMED.