NI INDUSTRIES, INC., APPELLEE AND CROSS-APPELLANT, V. HUSKER-HAWKEYE DISTRIBUTING, INC., APPELLANT AND CROSS-APPELLEE, AND KEITH B. EDQUIST, APPELLEE AND CROSS-APPELLEE.

448 N.W.2d 157

Filed November 22, 1989.    No. 86-869.

E. Dean Hascall, of Hascall, Jungers & Garvey, for appellant.

John D. Hartigan, Jr., of Kennedy, Holland, DeLacy & Svoboda, for appellee NI Industries.

HASTINGS, C.J., CAPORALE, and GRANT, JJ., and MORAN and BROWER, D. JJ.

BROWER, D.J.

Husker-Hawkeye Distributing, Inc., appeals an order of the district court for Douglas County entering judgment against it in the amount of $15,599.41, plus interest from June 7, 1984, on an amended petition brought by NI Industries, Inc., to recover an unpaid account. NI Industries cross-appeals the dismissal of defendant Keith B. Edquist and the allowance of a setoff in favor of Husker-Hawkeye for merchandise authorized for return.

In an action at law tried to the court without a jury, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Preisendorf v. Mettenbrink*, 232 Neb. 558, 441 N.W.2d 203 (1989). It is not within the province of the Supreme Court to resolve conflicts in or reweigh evidence. *Bruning Seeding Co. v. McArdle Grading Co.*, 232 Neb. 181, 439 N.W.2d 789 (1989); *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. 869, 374 N.W.2d 40 (1985).

In 1982, Husker-Hawkeye began distributing products for Thermador/Waste King, a division of NI Industries. Husker-Hawkeye received inventory from the previous distributor through NI Industries and paid NI Industries for the products. On March 24, 1983, Edquist, president of Husker-Hawkeye, signed a distributorship agreement between Husker-Hawkeye and NI Industries. The contract was signed by the vice president of sales and marketing of Thermador/Waste King on behalf of NI Industries on April 6, 1983. The contract allowed either party to terminate the agreement upon 60 days' written notice. The contract also provided:

In the event of the termination of this Agreement by either party for any reason, the Company may at its option repurchase from Distributor F.O.B. the Company's dock at Vernon, California, any Products and any spare parts thereof on hand in the Distributor's place of business or in the possession of the Distributor at the net price paid by the Distributor to the Company, less actual freight on the shipment thereof to return the Products and spare parts to the Company. On demand the tender of the repurchase price, the Distributor shall be obligated to deliver such Products and spare parts to the Company forthwith. The Company reserves the right, however, to reject any Product or spare parts [sic] not in first class condition or which has been removed from its carton, or which is not a current model.

In January 1984, Edquist informed James Roach, regional sales manager for Thermador/Waste King in charge of Minnesota, Iowa, Nebraska, North Dakota, South Dakota, and Montana, that Husker-Hawkeye was not satisfied with its performance with the Thermador/Waste King product line and wished to cease distributing the products. Roach informed E. Toby Bowen, area sales manager, of Husker-Hawkeye's intentions to terminate in a memorandum dated January 24, 1984.

Husker-Hawkeye agreed to continue as a distributor until a replacement distributor could be found. According to Edquist, this agreement was in exchange for an agreement by NI Industries, through Roach, to repurchase all inventory Husker-Hawkeye had on hand when the new distributor took over. The actual notice of termination was dated March 25, 1984, although Edquist testified it was not sent until the latter part of May 1984. Husker-Hawkeye continued to order and purchase stock from NI Industries.

On June 6, 1984, Roach and Bowen went to Husker-Hawkeye to begin making arrangements for the transfer of inventory to the new distributor. Edquist gave them a list of the inventory on hand. At this time Bowen told Edquist that NI Industries would transfer only current inventory still in the original carton.

After the meeting, Roach and Bowen finalized arrangements for the transfer of most of the inventory to either the new distributor or to a distributor in St. Louis who agreed to take the merchandise which was in the process of being eliminated from NI Industries' product line.

On June 7, 1984, Roach and Bowen returned to Husker-Hawkeye. At that time they were prepared to begin the process of transferring the inventory. They reiterated the fact that the only inventory to be transferred was inventory which was undamaged, current, and still in the original carton. Edquist told Roach and Bowen that unless NI Industries repurchased all the inventory in Husker-Hawkeye's possession, it could not repurchase any of the inventory. Roach and Bowen then left Husker-Hawkeye, apparently having decided to exercise NI Industries' option under the contract not to repurchase the inventory.

NI Industries brought suit against Husker-Hawkeye and Edquist to recover $16,844.81 for purchases made by Husker-Hawkeye between March and May of 1984. Defendant Husker-Hawkeye, in its answer, admitted the existence of the distributorship agreement, but alleged that the agreement expired on December 31, 1983, and that the parties agreed NI Industries would take back all undistributed inventory in Husker-Hawkeye's possession at the time Husker-Hawkeye ceased distribution of NI Industries' products. Further, Husker-Hawkeye alleged it had tendered possession of the inventory to NI Industries. Husker-Hawkeye, by way of a counterclaim, sought an order directing NI Industries to give Husker-Hawkeye full credit for the value of the inventory, to remove the inventory at its expense, to pay a fair and reasonable amount for storage, and to pay $1,500 for cooperative advertising allowance. (Prior to trial, Husker-Hawkeye received the credit for the advertising allowance.) Defendant Edquist filed a general denial.

Following trial, the court found Husker-Hawkeye purchased inventory pursuant to a distributorship agreement in the amount of $16,844.41, which amount remained unpaid. The court found there was a bona fide dispute as to the amount due until June 7, 1984; therefore, no prejudgment interest was

awarded prior to that date. The court gave Husker-Hawkeye credit for $1,245 for merchandise which the court found Husker-Hawkeye was authorized to return. The court also found Edquist's only involvement in the transaction was as president of Husker-Hawkeye and dismissed the action against Edquist. Pursuant to its findings, the court entered judgment against Husker-Hawkeye in the amount of $15,599.41, plus interest from June 7, 1984.

Husker-Hawkeye appeals, claiming the trial court erred in not ordering NI Industries to credit its account for the full value of the inventory and in awarding prejudgment interest. NI Industries cross-appeals, claiming the trial court erred in dismissing its amended petition against Edquist and in allowing the setoff.

Husker-Hawkeye's first assignment of error claims the trial court erred in not giving it credit for the full value of the inventory in its possession. This argument is based on the contract as Husker-Hawkeye contends it existed; that is, NI Industries agreed to repurchase all inventory in Husker-Hawkeye's possession in return for Husker-Hawkeye's continuing as a distributor until a replacement could be found.

The trial court found the distributorship contract continued in existence until Husker-Hawkeye formally terminated the agreement by the letter sent in May 1984. The court based its finding on Husker-Hawkeye's answers to requests for admissions. In its answers, Husker-Hawkeye, through Edquist as president, admitted, among other things: (1) It executed the distributorship agreement; (2) it ordered and received appliances and parts pursuant to the agreement, which were sold and shipped to it by NI Industries from March 1984 through May 30, 1984, in the amount of $16,844.41, which amount remained unpaid; and (3) the distributorship agreement was not terminated until NI Industries received the letter from Husker-Hawkeye dated March 25, 1984, on May 26, 1984. The court concluded, based on Neb. Ct. R. of Disc. 36(b) (rev. 1989), that the evidence "conclusively established the distributorship agreement was in full force and effect, that the goods appearing on Exhibit 6 [the inventory list] were ordered pursuant to that agreement and unpaid for."

Rule 36(b) states in part: "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Husker-Hawkeye never sought to amend or withdraw its admissions; therefore, Husker-Hawkeye's answers to requests for admissions establish that the distributorship agreement did not terminate on December 31, 1983, as Husker-Hawkeye claims, and continued in effect through May 1984.

Even without such admissions, there is sufficient evidence to support a finding that the distributorship agreement continued in effect as written until it was terminated in May. Both Roach and Bowen testified there was no agreement as alleged by Husker-Hawkeye. Further, Bowen stated neither he nor Roach, the person who allegedly made the agreement with Husker-Hawkeye, had the authority to make such an agreement.

For the foregoing reasons, Husker-Hawkeye's first assignment of error is without merit.

Husker-Hawkeye's second assignment of error claims the trial court erred in awarding prejudgment interest, since there was a dispute as to whether Husker-Hawkeye owed the money and whether Husker-Hawkeye was entitled to any setoff.

The distributorship agreement states: "Any amounts overdue and owing by the Distributor to the Company shall bear interest at the lesser of two (2) percent over the prime rate of interest charged by the main office of the Crocker National Bank, Los Angeles, California, or the maximum rate allowed by law." The parties stipulated to the applicable interest rates from May 30, 1984, until the date of trial.

Prejudgment interest is interest due prior to the rendition of a judgment, pursuant to a statute. Where interest is assessed by reason of an agreement between the parties, the general rules regarding prejudgment interest have no application. *First Nat. Bank v. Bolzer*, 221 Neb. 415, 377 N.W.2d 533 (1985).

"Where the parties have contracted for the payment of a particular lawful rate of interest, to be paid after the maturity of the debt and on default in payment, such contract controls and the rate thus fixed is recoverable, provided the rate is not unconscionable. Thus, if the

contract provides for a certain rate of interest until the principal sum is paid . . . the contract governs until the payment of the principal or until the contract is merged in a judgment."

*Prudential Ins. Co. v. Greco,* 211 Neb. 342, 347-48, 318 N.W.2d 724, 728 (1982), quoting 47 C.J.S. *Interest & Usury* § 40 (1982).

In *First Nat. Bank v. Bolzer, supra,* the trial court granted plaintiff's "Motion to Include Prejudgment Interest" after a jury returned a verdict in favor of plaintiff on a guaranty signed by defendant. The two notes underlying the guaranty bore interest at the rates of 14 percent and 16 percent. In holding the bank was entitled to interest prior to the rendition of judgment, the Supreme Court stated:

It would be a strange anomaly if, by merely disputing the validity of a note, one was relieved of paying the interest agreed to in the note on the theory that the claim was now unliquidated. Just as the principal was due once the jury believed that Bolzer signed the note, so, too, was due the interest provided for by the note. It is unfortunate that the parties have referred to this as "prejudgment interest" when in fact it is simply the interest contracted for by the parties and agreed to be paid in addition to the principal.

*Id.* at 422, 377 N.W.2d at 538.

The distributorship agreement between NI Industries and Husker-Hawkeye, which the trial court found remained in effect until May 1984, called for interest at 2 percent above the prime rate charged by Crocker National Bank in California. The interest awarded by the trial court is interest on the contract, rather than "prejudgment" interest as characterized by the court. As such, the court did not err in awarding the interest.

On its cross-appeal, NI Industries first claims the trial court erred in dismissing Edquist as a defendant. The argument in support of this claim rests upon the following requests for admissions:

2. On or about March 28, 1983, the plaintiff and defendant Edquist entered into a Distributorship Agreement, *a copy of which is attached to the plaintiff's*

*Amended Petition and marked Exhibit "2."*

. . . .

4. Pursuant to the said Distributorship Agreement . . . Edquist ordered . . . certain appliances and parts, which were delivered to Edquist.

. . . .

6. That the agreed purchase price of the appliances and parts sold by the plaintiff to Edquist, disregarding any defenses or offsets Edquist may have, which is unpaid amounts to $16,844.41.

. . . .

8. That the unpaid appliances and parts in the amount of $16,844.41 were sold and shipped by the plaintiff to Edquist during a period commencing March, 1984 and ending on or before May 30, 1984.

. . . .

10. That the appliances and parts for which payment has not been made, as referred to in Request Nos. 4 and 6 were received and accepted by Edquist.

. . . .

12. That the plaintiff has made demand on Edquist for the payment of the said sale $16,844.41.

. . . .

14. Edquist has refused to make payment of the said $16,844.41.

(Emphasis supplied.)

NI Industries argues that the answers to these requests for admissions were signed by Edquist in his individual capacity and not as president of Husker-Hawkeye, and, therefore, he is personally liable. It cites in support of this contention the following language from *Modern Plumbing & Heating, Inc. v. Journey West Campground, Inc.*, 193 Neb. 781, 784, 229 N.W.2d 192, 194 (1975): " 'Unequivocal judicial admissions are generally conclusive on the party . . . .' [They are] 'a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true.' "

We have no quarrel with this rule of law. However, NI

Industries overlooks the very important word "unequivocal" in that citation and also ignores critical factual discrepancies in the record.

In the first place, the seven cited requests for admissions answered by Edquist are identical with requests numbered 1, 3, 5, 7, 9, 11, and 13 propounded to and answered by Husker-Hawkeye. Furthermore, the distributorship agreement which Edquist's answer No. 2 states was entered into between him and NI Industries does not exist. The amended petition refers in its body only to exhibit 1, and attached to that pleading is only one distributorship agreement. That agreement indicates on the title page that it is a distributorship agreement between NI Industries and Husker-Hawkeye. Furthermore, that agreement is signed by Keith B. Edquist as president of Husker-Hawkeye.

The only conclusion we can reach from the foregoing portion of the record is that exhibit 2, which it is claimed Edquist signed in his personal capacity, simply does not exist. We believe that no better case could be made for a claim of equivocalness.

Furthermore, portions of Edquist's testimony support a finding of equivocal admissions. We refer to the following interrogation:

Q. Mr. Edquist, how long have you been chief executive officer of Husker-Hawkeye?

A. Nine years.

Q. And during that period of — you were chief executive, did you have occasion to become distributor for Thermador/Waste King?

A. Yes, I did.

. . . .

Q. . . . . Who owns the inventory right now?

A. I do.

Q. Who does?

A. Husker-Hawkeye Distributing.

. . . .

Q. Over the years, do you have any idea how many major lines you have distributed or Husker-Hawkeye has distributed?

A. A total of four and we presently still distribute three.

. . . .

Q. . . . Mr. Edquist, have you ever denied that Husker-Hawkeye purchased items from NI Industries during March, April and May of 1984 which were not paid for? . . .

A. No, I have never.

Finally, there are 22 separate invoices which NI Industries includes within its requests for admissions. Each of those invoices of NI Industries indicates that the goods were sold to Husker-Hawkeye and were shipped to Husker-Hawkeye.

Under the facts in this case, the rule regarding judicial admissions simply is not applicable, and the trial court was correct in refusing judgment against Edquist personally.

NI Industries' final assignment of error claims the trial court erred in awarding $2,290 as setoff against the amount due from Husker-Hawkeye. It should be noted that the court actually awarded a setoff in the amount of $1,245 for items Husker-Hawkeye was entitled to return under a "Customer Services Authorization to Return Material" (AR).

At trial, Husker-Hawkeye introduced into evidence two ARs, each for one model No. MCM 255. Attached to the first AR, dated February 22, 1983, is a shipping memorandum showing the merchandise was returned to Thermador/Waste King on July 22, 1983, almost a year before Husker-Hawkeye ceased distributing NI Industries' products. There is nothing in the record to indicate Husker-Hawkeye has not received credit for this return. The second AR is dated December 15, 1983. There is no indication the merchandise listed on the second AR was ever returned.

The inventory list shows one unit of model No. MCM 255 with the notation "missing micro" behind the entry on the page covering damaged merchandise. The price of this particular unit is $1,195.

Taken together, it is clear there is only one item which is entitled to be returned under an AR. There is no indication this merchandise had been returned prior to trial. Edquist stated on cross-examination that Husker-Hawkeye would not be entitled to credit for the AR unless the merchandise had been returned.

The trial court erred in granting setoff in the amount of $1,245 for either AR. The award of the trial court is thus increased by that amount.

For the foregoing reasons the judgment of the trial court is affirmed as modified concerning the setoff for damaged merchandise.

AFFIRMED AS MODIFIED.