**BRYAN MEMORIAL HOSPITAL, d/b/a Lincoln General Hospital, a Nebraska nonprofit corporation, Plaintiff,**

v.

**ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, Defendant and Third–Party Plaintiff,**

v.

**Muriel P. Rokes, Third–Party Defendant.**

**No. 4:98CV3263.**

United States District Court, D. Nebraska.

Sept. 27, 2001.

William F. Austin, Erickson, Sederstrom Law Firm, Lincoln, NE, Edward F. Hoffman, Cada & Associates, Lincoln, NE, for Plaintiff.

Stephen L. Ahl, Andrew B. Koszewski, Wolfe, Snowden Law Firm, Lincoln, NE, for Defendant and Third–Party Plaintiff.

Vincent M. Powers, Powers Law Firm, Lincoln, NE, for Third–Party Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KOPF, District Judge.

This is an action brought by a hospital against an insurance company seeking recovery of $77,381.58 plus interest based upon the insurance company's alleged impairment of the hospital's lien upon settlement proceeds when the insurance company reached a settlement directly with the injured party without paying the hospital for medical services it provided to the injured party. Following a bench trial[1] on the merits of this case, I now issue my findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52(a).[2]

1. The bench trial occurred on September 21, 1999 (filing 57). Because the constitutionality of Nebraska's hospital lien statute, Neb. Rev.Stat. § 52–401, a pivotal issue in this case, was under consideration by the Nebraska Supreme Court when the bench trial in this matter concluded, I agreed to hold this matter in abeyance until the Nebraska Supreme Court's opinion was issued. Upon the parties' notice to this court on January 18, 2001, that the Nebraska Supreme Court had issued its opinion, I granted the parties leave to submit additional evidentiary materials and briefs in light of the Nebraska Supreme Court's opinion, making this matter ripe for decision in March 2001. (Filing 63.)

2. Any finding of fact more properly characterized as a conclusion of law, and any conclusion of law more properly deemed a finding of fact, should be so construed.

## FINDINGS OF FACT[3]

### A. Factual Background

On November 10, 1996, third-party defendant Muriel P. Rokes was involved in an automobile accident in Kansas with Theora Bargen, a Nebraska resident who was insured by defendant Allied Property and Casualty Insurance Company. Allied is an Iowa corporation that provides automobile insurance to Nebraska residents. On the day of the accident, Rokes was admitted to Lincoln General Hospital ("LGH") for medical treatment of the injuries she received in the accident with Bargen. LGH is a Nebraska nonprofit corporation. From November 10, 1996, to November 22, 1996, LGH provided $83,907.08 in various hospital services to Rokes, an amount which the parties have stipulated is fair and reasonable.

Pursuant to Neb.Rev.Stat. Ann. § 52–401[4] (Michie 1995), plaintiff LGH perfected its hospital lien in the amount of $83,907.08 plus finance charges on any settlement proceeds to which Rokes may be entitled from Bargen by sending a Notice of Hospital Lien to Allied by certified mail on December 26, 1996. Allied received a copy of the Notice of Hospital Lien by certified mail on January 9, 1997.

After Rokes filed a federal lawsuit in Kansas against Bargen's estate, Rokes reached a settlement with Bargen's insurance carrier, Allied, in the amount of $225,000.00. Allied's limit of liability coverage for Bargen was $250,000.00. Rokes accepted the settlement offer on January 22, 1998, by signing the bottom of an acknowledgment letter from her attorney which advised Rokes that "we may need to pay claims from Medicare and the hospitals from this money." On February 16, 1998, Rokes signed a "Release" which contained the terms of settlement and provided that in consideration for the money received by Rokes,

> Releasor [Rokes] elects to and does assume all risk or claims heretofore, or after arising, known or unknown, including without limitation, ... direct or indirect medical expense ... based on the incident herein described. [Rokes], for herself and her heirs, legal representatives and assigns, knowingly release and forever discharge [Bargen's estate and Allied] and their heirs and legal representatives from all liability with respect

---

**3.** The source for the court's Findings of Fact is the parties' stipulated facts and attached exhibits (filing 59).

**4.** Section 52–401 provides in part:

Whenever any person employs a physician, nurse, or hospital to perform professional service or services of any nature, in the treatment of or in connection with an injury, and such injured person claims damages from the party causing the injury, such physician, nurse, or hospital, as the case may be, shall have a lien upon any sum awarded the injured person in judgment or obtained by settlement or compromise on the amount due for the usual and customary charges of such physician, nurse, or hospital applicable at the times services are performed, except that no such lien shall be valid against anyone coming under the Nebraska Workers' Compensation Act.

In order to prosecute such lien, it shall be necessary for such physician, nurse, or hospital to serve a written notice upon the person or corporation from whom damages are claimed that such physician, nurse, or hospital claims a lien for such services and stating the amount due and the nature of such services, except that whenever an action is pending in court for the recovery of such damages, it shall be sufficient to file the notice of such lien in the pending action.

A physician, nurse, or hospital claiming a lien under this section shall not be liable for attorney's fees and costs incurred by the injured person in securing the judgment, settlement, or compromise, but the lien of the injured person's attorney shall have precedence over the lien created by this section.

to such matters and from all claims and causes of action based in any manner on the incident.

A "Settlement Agreement" executed by Rokes the same day as the "Release" stated in part:

> Further I understand that there may be some claims made by hospitals and doctors for which I may be responsible for payment, or may not be responsible for payment. This indebtedness would result from charges made by these parties in excess of payments made by my automobile insurance company, my health insurance company and medicare.

Funds from this settlement were distributed to Rokes, Medicare, and James W. Wilson (Rokes' attorney). Medicare received $183,813.79, out of which attorney's fees and expenses were paid to James W. Wilson in the amount of $75,569.95. Rokes received $30,000.00, with the remaining $11,186.21 also paid to James W. Wilson as attorney's fees and expenses. The settlement check issued by Allied did not include LGH as a party payee.

LGH has not received payment from Allied, Rokes, or Rokes' attorney for its original bill of $83,907.08. After a $6,525.50 payment to LGH by State Farm Insurance from Rokes' "Medpay" coverage, an unpaid balance of $77,381.58 remains due to LGH. Under Rokes' Conditions of Admission, interest is accruing on the unpaid balance of Rokes' account at the rate of 14% per annum, computed monthly from and after February 20, 1997, which is 90 days after the final bill date of November 22, 1996.

### B. Procedural Background

Plaintiff Bryan Memorial Hospital, as successor in interest to LGH, commenced an action on July 1, 1998, against Allied in the District Court of Lancaster County, Nebraska, seeking recovery of $83,907.08 plus interest. Allied removed the case to this court on August 6, 1998, based on diversity. (Filing 1.) In its answer (filing 3), Allied asserted as an affirmative defense the unconstitutionality of Nebraska's hospital lien statute, Neb.Rev.Stat. § 52–401. Allied's answer also asserted third-party complaints against Rokes and her attorney, Wilson. In her answer (filing 7) to Allied's third-party complaint against her, Rokes asserted a cross-claim against her attorney. Prior to trial, Allied and Rokes dismissed their claims against Rokes' attorney, Wilson. (Filings 42 & 56.)

After Wilson's dismissal from this case, the controverted issues that remain for the court's consideration are as follows:

1. Whether or not Neb.Rev.Stat. § 52–401 constitutes special legislation which violates Article III, Section 18, of the Nebraska Constitution, as written or as applied to defendant Allied.

2. Whether or not the applicable substantive law to be applied is the law of Nebraska or Kansas.

3. Whether plaintiff LGH must prove the priority of its claimed lien, and if so, what that priority is, as well as its effect, if any, on any amount due the plaintiff.

4. Whether or not third-party defendant Rokes or her agents, in consideration for Rokes' settlement with Allied, agreed with Allied to pay the amount of the hospital lien of plaintiff LGH out of the proceeds of the settlement and hold Allied harmless from any claim of LGH.

(Filing 35, Order on Final Pretrial Conf. at 4.)

### CONCLUSIONS OF LAW

### A. Constitutionality of Neb.Rev.Stat. § 52–401

After recent decisions by the Nebraska Supreme Court, defendant Allied concedes

that its affirmative defense that Neb.Rev. Stat. § 52–401 is unconstitutional special legislation under Article III, Section 18, of the Nebraska Constitution is without merit. (Trial Br. of Def. Allied at 4–5.) Therefore, I need not consider this issue further. *Bergan Mercy Health System v. Haven*, 260 Neb. 846, 620 N.W.2d 339 (2000) (§ 52–401 not unconstitutional special legislation in allowing hospitals, doctors, and nurses to perfect lien not allowed to other creditors, nor in limiting that lien to debtors who have been injured by tortfeasors); *Parnell v. Good Samaritan Health Systems, Inc.*, 260 Neb. 877, 620 N.W.2d 354 (2000) (§ 52–401 not unconstitutional special legislation in providing exception to common fund doctrine); *Anderson v. Nissan Motor Co., Ltd.*, 139 F.3d 599, 601 (8th Cir.1998) (in determining law of the State of Nebraska, federal courts are bound by decisions of Nebraska Supreme Court).

**B. Substantive Law to be Applied**

**(i) Kansas or Nebraska Law**

■■■ Plaintiff LGH asserts that Nebraska law applies to this dispute, whereas defendant Allied claims that Kansas law governs. Federal district courts, sitting in diversity, must apply the choice-of-law rules of the state in which the court sits. *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir.), *cert. denied*, 513 U.S. 964, 115 S.Ct. 428, 130 L.Ed.2d 341 (1994); *Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307, 312 (8th Cir. 1991). The Nebraska Supreme Court generally adheres to the Restatement (Second) of Conflict of Laws to resolve choice-of-law issues, using the "most significant relationship" approach in contract and tort cases. In contract actions, the Nebraska Supreme Court has specifically adopted the approach set forth in section 188 [5] of the Restatement (Second) of Con-

**5.** Section 188 provides as follows:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

*Restatement (Second) of Conflict of Laws* § 188 (1971).

Section 6 of the Restatement (Second) of Conflict of Laws, referred to in section 188, above, provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Restatement (Second) of Conflict of Laws* § 6 (1971).

flict of Laws. *Federal Deposit Ins. Corp. v. Nordbrock,* 102 F.3d 335, 338 (8th Cir. 1996); *Enron Corp.,* 940 F.2d at 312.

According to the Restatement (Second), *supra,* § 188 analysis, the rights and duties of the contracting parties are governed by the law of the state with the most significant relationship to the transaction and the parties. The relevant principles a court should consider are the place of the contracting, the place of any negotiations which occurred, the place of performance, the location of the subject matter, and the domicil or residence of the parties.

*Powell v. American Charter Fed. Savings & Loan Ass'n,* 245 Neb. 551, 556–57, 514 N.W.2d 326, 331 (1994).

In an action by a Nebraska hospital against a tortfeasor's insurance carrier to enforce its hospital lien under Neb.Rev. Stat. § 52–401, the Nebraska Court of Appeals resolved whether the Nebraska or Iowa hospital lien statutes applied to the dispute. *AMISUB (Saint Joseph Hosp.), Inc. v. Allied Property & Casualty Ins. Co.,* 6 Neb.App. 696, 576 N.W.2d 493 (Ct. App.1998). In *AMISUB,* a car accident between Iowa residents occurred in Iowa, the injured party was treated in a Nebraska hospital, the injured party subsequently sued the tortfeasor in Iowa, and the Nebraska hospital where the injured party was treated gave notice of its lien to the Iowa tortfeasor and his insurance company, as well as to the Iowa court where the lawsuit was pending.

Applying sections 6 and 188 of the Restatement (Second) of Conflict of Laws, the court determined that Nebraska law applied because Nebraska had the most significant relationship to the formation of the implied contract between the hospital and the person being given medical care— the implied contract that later became the basis for a hospital lien. Specifically, the hospital—a Nebraska corporation—had a cause of action against the injured party to whom it provided medical services in Nebraska; the hospital had the right to enforce that cause of action in Nebraska; the hospital's lien attached when the hospital rendered services to the injured party in Nebraska; and the tortfeasor's insurance carrier was licensed to transact business in Nebraska.

We conclude that the Restatement ... § 188, has the effect of providing that a lien that has been perfected under the law of the state where the hospital service was rendered constitutes a valid lien upon any award, judgment, or settlement, regardless of where the event which caused the injury occurred or of the residence of the injured party or the party causing the injury.

*AMISUB,* 6 Neb.App. at 708, 576 N.W.2d at 501–02.

In the very similar case now before this court, plaintiff LGH is a Nebraska nonprofit corporation organized and existing under the laws of the State of Nebraska and defendant Allied is engaged in the business of providing automobile insurance to Nebraska citizens. (Filing 59, Stipulation of Facts ¶¶ 1 & 2.) After suffering injuries from a car accident in Kansas, Muriel Rokes was admitted and treated in LGH, a Nebraska hospital, after which LGH perfected its hospital lien pursuant to Neb.Rev.Stat. § 52–401 on any settlement proceeds to which Rokes was entitled from the tortfeasor, Theora Bargen. (*Id.* ¶ 5.)

Consistent with the choice-of-law analysis in *AMISUB,* I conclude that Nebraska law applies to this dispute. While I agree with Allied that a decision by a state court of appeal is not binding upon this federal court, I have a duty, in the absence of a decision by the Nebraska Supreme Court on this precise issue, to "determine what the [Nebraska Supreme] [C]ourt would

probably hold were it to decide the issue." *Anderson v. Nissan Motor Co., Ltd.,* 139 F.3d 599, 601 (8th Cir.1998). In making this determination, I am to consider " 'relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data.' " *Id.* at 601–02 (quoting *Farr v. Farm Bureau Ins. Co. of Nebraska,* 61 F.3d 677, 679 (8th Cir.1995)). *AMISUB* is analogous, relevant state precedent that is predictive of what the Nebraska Supreme Court would hold should it be faced with the issue.

### (ii) Application of Nebraska Law to This Case

The Nebraska Supreme Court has held that a tortfeasor's insurer is not a proper defendant in an action to foreclose a hospital lien under Neb.Rev.Stat. § 52–401 because the lien created by the statute in effect transfers to the hospital the injured party's interest in money obtained in judgment or settlement of the injured party's claims against the tortfeasor. While a tortfeasor may get the money to pay a settlement from his or her insurer, the settlement itself is not between the injured party and the insurer, but between the injured party and the tortfeasor; hence, the tortfeasor is generally the party against which the hospital must assert its lien. *West Nebraska General Hosp. v. Farmers Ins. Exchange,* 239 Neb. 281, 287, 475 N.W.2d 901, 906 (1991).

We are careful to point out, however, that insurance companies are not completely shielded from liability under our holding. Upon perfection of a lien by a hospital, a duty arises on the part of the tort-feasor's insurer not to impair the hospital's rights under that lien. If such an insurer settles directly with the injured party despite the existence of a perfected hospital lien, it has breached that duty and is liable directly to the hospital. Thus, ... [i]f [the tortfeasor's insurer] desired to settle directly with

[the injured party] it would, as the [tortfeasor's] agent, have a duty to satisfy the lien and if it failed to do so would be liable to the hospital.

*Id.* at 287, 475 N.W.2d at 906–07 (internal citation omitted); *AMISUB,* 6 Neb.App. at 703, 576 N.W.2d at 499 ("[U]pon perfection of a lien by a hospital, a duty arises on the part of the tort-feasor's insurer not to impair the hospital's rights under that lien. If such an insurer settles directly with the injured party despite the existence of a perfected hospital lien, it has breached that duty and is liable directly to the hospital." (internal citations omitted)).

Thus, the Nebraska Supreme Court has recognized an independent cause of action—somewhat in the nature of a tort—which is separate and distinct from any cause of action which LGH may have to foreclose its lien against Muriel Rokes' settlement proceeds under Neb.Rev.Stat. § 52–401. LGH explicitly states that it is not seeking foreclosure of its lien against Rokes' settlement proceeds; rather, it is requesting judgment directly from the tortfeasor's insurer for contravening or impairing LGH's perfected lien. (LGH's Resp. to Tr. Br. of Def. at 3, 6, 8; Filing 1, Ex. B, Removed Complaint ¶ 19 & Prayer for Relief.)

As stated in *West Nebraska* and *AMISUB,* to prevail on its cause of action, LGH need only prove that it had a perfected hospital lien under Neb.Rev.Stat. § 52–401, the amount of that lien, and that Allied impaired that lien. Here, the parties have stipulated that LGH has a perfected hospital lien under section 52–401 in the amount of $83,907.08 plus finance charges for the medical care of Muriel P. Rokes and that Allied entered into a settlement directly with Muriel Rokes despite the existence of LGH's perfected lien. Therefore, Allied breached its duty not to impair LGH's rights under its perfected

lien and is liable directly to the hospital for its breach of that duty.

■ Because I have been unable to locate case law or statutory language to guide my calculation of damages upon an insurance company's breach of its duty not to impair a hospital's rights under its perfected lien,[6] I shall approach such calculation using general constructive trust principles—that is, Allied in effect held the settlement fund in constructive trust for the benefit of the beneficiaries (Rokes, her attorney, Medicare, and LGH) based on the principle that Allied cannot be permitted to benefit from its wrongdoing. *See Mischke v. Mischke*, 253 Neb. 439, 450, 571 N.W.2d 248, 257 (1997) (even in the absence of fraud, constructive trust principles dictate that wrongdoer holds property in constructive trust for benefit of beneficiaries because wrongdoer cannot be allowed to benefit from his improper actions; agent cannot be allowed to keep advantage gained from breach of fiduciary duty and fiduciary can follow proceeds of property held in constructive trust).

Had Allied properly taken into account LGH's lien when it settled with Rokes for $225,000, first distributed from the fund would have been $11,186.21 to Rokes' attorney for securing the settlement. Neb. Rev.Stat. § 52–401 (hospital claiming lien shall not be liable for attorneys' fees and costs in securing the settlement, but "the lien of the injured person's attorney shall have precedence over the lien created by this section"); *West Nebraska General Hosp. v. Farmers Ins. Exchange*, 239 Neb. at 286, 475 N.W.2d at 906 (lien under § 52–401 transferred to hospital injured person's interest in settlement up to value of hospital services provided, less reasonable costs of recovery, including attorney fees).

Allied would have then recognized that it had a remaining settlement fund of $213,813.79, with a $183,813.79 claim from Medicare and a $77,381.58 claim from LGH—for a claim total of $261,195.37. Since the settlement fund was insufficient to pay Medicare and LGH, Rokes had no entitlement to the money. Having provided medical care to Rokes, Medicare and LGH clearly had priority to the money over Rokes. Indeed, and as just noted, LGH had a lien against Rokes' settlement.

■ In the absence of claims of priority as between Medicare and LGH (which have not properly been asserted here[7]), Allied should have then distributed the remainder of the settlement fund pro rata to Medicare and LGH. Because the claims exceeded the settlement fund, Allied should have paid the claimants a percentage of what they claimed. Dividing $213,813.79 (settlement fund amount) by $261,195.37 (amount of total claims) equals

---

6. *Ehlers v. Perry*, 242 Neb. 208, 494 N.W.2d 325 (1993), was an interpleader action between a driver's insurer, a passenger, a hospital, and the Department of Social Services (DSS) for distribution of a settlement resulting from the passenger's personal injury action against the driver. While the court in that case evaluated the relative priorities of those claiming a portion of the settlement, including the hospital's lien under Neb.Rev. Stat. § 52–401, that case did not involve the liability of an insurance company that had breached its duty under Nebraska case law to avoid impairing the hospital lien by settling directly with the injured party.

7. As explained below, the only issue preserved for review regarding priority is whether Plaintiff was required to prove priority in its case-in-chief in order to recover for impairing LGH's perfected hospital lien. It does not. To the extent Allied now seeks to assert the affirmative defense that the claim of Medicare to a portion of Rokes' settlement proceeds has priority over LGH's claim for payment, the defense has been waived because it has not been pled and Allied's belated request to raise the defense was specifically denied by Magistrate Judge Piester.

.8186, or 81.86%. Thus, I shall order that Allied pay Plaintiff 81.86% of its claim, or $63,344.56, plus interest at the rate of 14% per annum,[8] computed monthly from and after the date Allied breached its duty to not impair LGH's lien by settling directly with Rokes—February 16, 1998—to the date of judgment.[9]

### C. Priority of Hospital's Lien

Preserved as a controverted issue in the Order on Final Pretrial Conference is "[w]hether plaintiff must prove the priority of its claimed lien, [and] if so, what that priority is, as well as its effect, if any, on any amount due plaintiff." (Filing 35, at 4.) As stated in the discussion above, to prevail on its cause of action against Allied for impairing LGH's perfected hospital lien by settling directly with the injured party despite the existence of the lien, LGH need not prove the priority of its lien.

To the extent that Allied now seeks to assert affirmative defenses that the claims of Medicare and Rokes' attorney to a portion of Rokes' settlement proceeds have priority over LGH's claim for payment, such defenses have not been pled and were specifically foreclosed when Magistrate Judge Piester denied (filing 51) Allied's post-pretrial-conference motion to amend its answer to allege these affirmative defenses (filing 48).

### D. Allied's Claim Against Rokes

■ Allied claims that when Rokes signed the "Release" and "Settlement Agreement," quoted above, she agreed with Allied to pay the amount of LGH's hospital lien out of the settlement proceeds and to hold Allied harmless from any future claims by LGH. (Filing 35, Order on Final Pretrial Conf. at 4.) Allied alleges that it "is entitled to recover from Rokes any amount that may be adjudged against Allied in favor of Plaintiff [LGH]." (Filing 3, Allied's Answer and Third–Party Complaints ¶¶ 14–17.)

■ There is nothing in the plain words of the Release and Settlement Agreement by which Rokes promises to indemnify or reimburse Allied. A "release of liability" is obviously different from an agreement to "indemnify" or "reimburse." The former essentially waives a claim, while the latter essentially promises to repay in the event of a future occurrence. In this regard, Allied has provided no authority which contradicts my reading of the Release and Settlement Agreement. Nor has Allied provided me with any authority to support its construction of the Release and Settlement Agreement. Therefore, I am left to the words of the agreement, and those words do not support Allied's claim against Rokes.

■ However, I note that Rokes has, in effect, been relieved of her obligation to pay LGH by virtue of my conclusion above that Allied must pay an amount approaching the total of LGH's lien for Rokes' hospital bills. I also note that, as part of her settlement with Allied, Rokes received $30,000.00 which the parties do

---

8. This is not prejudgment interest; rather, it is the contractual rate of interest accruing on the unpaid balance of Rokes' account pursuant to Rokes' Conditions of Admission. *See, e.g., NI Industries, Inc. v. Husker–Hawkeye Distributing, Inc.,* 233 Neb. 808, 813–14,448 N.W.2d 157, 161 (1989) (generally distinguishing prejudgment interest awarded pursuant to state statute and interest assessed by reason of an agreement between the parties).

9. I recognize that my decision requires Allied to pay beyond its $250,000 policy limit. However, I find no Nebraska cases dealing with an insurance company's breach of its duty to not impair a perfected hospital lien that tie damages for such breach to the offending insurance company's policy limit.

not indicate was used to pay any medical bills. " '[W]here benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving and retaining the benefits to pay their reasonable value.' " *Professional Recruiters, Inc. v. Oliver*, 235 Neb. 508, 515, 456 N.W.2d 103, 108 (1990) (quoting *Hoffman v. Reinke Mfg. Co., Inc.*, 227 Neb. 66, 69, 416 N.W.2d 216, 219 (1987)). "[O]ne will not be allowed to profit or enrich oneself unjustly at the expense of another." *Hoffman*, 227 Neb. at 69, 416 N.W.2d at 219.

Accordingly, I shall enter judgment in favor of Allied and against Rokes in the amount of $30,000.00 so as to avoid Rokes' unjust enrichment.

IT IS ORDERED that by separate document,

1. Judgment shall be entered in favor of plaintiff Bryan Memorial Hospital d/b/a Lincoln General Hospital and against defendant Allied Property and Casualty Insurance Company in the amount of $63,344.56, plus interest at the rate of 14% per annum, computed monthly from and after February 16, 1998, to the date of judgment;

2. Judgment shall further be entered in favor of third-party plaintiff Allied Property and Casualty Insurance Company and against third-party defendant Muriel P. Rokes in the amount of $30,000.00; and

3. Judgment shall further be entered awarding to the prevailing parties costs and post-judgment interest calculated in accordance with 28 U.S.C. § 1961 from and after the date of judgment as provided by law.

## JUDGMENT

Pursuant to the Findings of Facts and Conclusions of Law entered this date,
judgment is entered in favor of plaintiff Bryan Memorial Hospital d/b/a Lincoln General Hospital and against defendant Allied Property and Casualty Insurance Company in the amount of $63,344.56, plus interest at the rate of 14% per annum, computed monthly from and after February 16, 1998, to the date of judgment. Judgment is further entered in favor of third-party plaintiff Allied Property and Casualty Insurance Company and against third-party defendant Muriel P. Rokes in the amount of $30,000.00. Judgment is further entered awarding to the prevailing parties costs and post-judgment interest calculated in accordance with 28 U.S.C. § 1961 from and after the date of judgment as provided by law.