ALEGENT HEALTH, A PARTNERSHIP, APPELLEE, V.
AMERICAN FAMILY INSURANCE, INC., APPELLANT.
656 N.W.2d 906
Filed February 21, 2003.   No. S-01-1366.

Jeffrey A. Silver for appellant.

Kirk E. Brumbaugh for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

### NATURE OF CASE

American Family Insurance, Inc. (American Family), appeals from a judgment of the Douglas County District Court, which found that a hospital lien filed by Alegent Health (Alegent) was valid and enforceable against American Family. Alegent was awarded $10,120.32 in damages.

### SCOPE OF REVIEW

■ When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Eyl v. Ciba-Geigy Corp.*, 264 Neb. 582, 650 N.W.2d 744 (2002).

### FACTS

On May 22, 1997, Alegent notified American Family and James Coran that Alegent claimed a statutory hospital lien for

expenses totaling $10,120.32 which were incurred in the treatment of Coran. Coran's injuries resulted from an automobile collision on September 24, 1996, and he was treated at Alegent from April 1 through November 6, 1997. The other party involved in the collision was insured by American Family. An amended notice of a hospital lien was sent to Coran, his attorney, and American Family on November 20.

Patty Vana, patient account representative for Alegent, stated in an affidavit that on November 20, 1997, she was told by Kimberly Nash at American Family that the company was negotiating with Coran and his attorney and that Nash had informed the attorney of the hospital lien. The attorney indicated to Nash that he would honor Alegent's lien.

Vana discussed Alegent's lien with Coran's attorney on December 8, 1997. Vana did not receive any further information from the attorney concerning settlement of Coran's claim.

Subsequent to perfection of the lien, American Family settled Coran's claim through his counsel. A check payable to Coran and his attorney for the policy limit of $100,000 was issued by American Family, and it was cashed on December 24, 1997. American Family did not include Alegent on the check because it had been assured by Coran's attorney that he would "work out" all liens.

On February 9, 1998, Coran's attorney told Vana that Alegent needed to bill Medicaid because Coran's bills would exceed the limits of American Family's policy. The attorney also indicated that Coran might file for bankruptcy. On that same day, Nash told Vana that American Family had settled the claim on November 25, 1997, and paid the policy limits to Coran and his attorney.

On February 11, 1998, Alegent contacted the Nebraska Department of Health and Human Services (DHHS), and DHHS indicated that pursuant to 471 Neb. Admin. Code, ch. 3, § 004.01 (1982), Medicaid would not pay medical expenses unless all funds from a settlement had been exhausted, and that Medicaid was the payor of last resort. Alegent was also told that Coran did not become eligible for Medicaid until November 1, 1996, and that, therefore, his original medical bills from the accident were not Medicaid eligible. In addition, Coran was required as a condition of eligibility to disclose a pending

third-party liability situation and to cooperate in securing payment of related bills. Neither Coran nor his attorney furnished DHHS with such information.

On April 15, 1998, Alegent filed a petition alleging that American Family had not protected Alegent's lien because American Family did not note the existence of the lien on the check which disbursed the insurance proceeds. Alegent claimed that Coran received the proceeds and subsequently filed for bankruptcy relief under chapter 7 of the federal bankruptcy statutes. Alegent asserted that as a result, any remedy it had against Coran had been legally foreclosed, and that Alegent was therefore entitled to enforce its hospital lien against American Family.

In its answer, American Family claimed that Coran was a "Medicare/Medicaid eligible beneficiary" and that all the services claimed by Alegent were Medicare/Medicaid-covered services. American Family asserted that the lien was in violation of federal law, 42 C.F.R. § 411.54(c)(2)(i) (1997), which provides that a hospital may not bill a liability insurer nor place a lien against the beneficiary's liability insurance settlement for Medicare-covered services. American Family also claimed that Alegent could not file a lien to secure a debt which did not exist because the debt had been discharged in bankruptcy.

Alegent filed a motion for relief from the automatic stay in the U.S. Bankruptcy Court for the District of Nebraska. On June 3, 1998, the bankruptcy court entered an order granting relief to the extent necessary for Alegent to determine the validity of its lien on the proceeds through a declaratory judgment or other action. The order noted that counsel for Coran had retained $25,000 of the $100,000 settlement in his trust account and that Coran deposited $43,548.61 in a " 'special account.' "

On June 9, 1998, the bankruptcy court vacated a portion of its earlier order which had retained jurisdiction of the proceeds in the trust account. The court stated:

> This is a fight between a debtor who claims certain assets as exempt and a creditor who claims a lien on those assets. The trustee has abandoned any interest in the assets . . . . The estate will not benefit no matter what the state court determination is. Therefore, there is no legal reason for this court to entertain continuing jurisdiction.

Both parties filed motions for summary judgment in the district court. At the summary judgment hearing, the parties stipulated that Coran had been granted a discharge in bankruptcy, that the enforceability of Alegent's lien rested on a determination of whether the lien on the proceeds of the settlement made the hospital a secured creditor, and that Coran's attorney had paid proceeds from the settlement to the clerk of the district court for Douglas County.

On November 14, 2001, the district court entered an order finding that Alegent had a valid and enforceable lien in the sum of $10,120.32.

## ASSIGNMENTS OF ERROR

American Family assigns as error that the district court erred in finding that a hospital lien can be enforced when the underlying debt has been discharged in bankruptcy. American Family also asserts that the filing of a hospital lien for "medicare/medicaid eligible charges" violates federal law, specifically 42 C.F.R. § 411.54(c)(2)(i).

## ANALYSIS

American Family argues that when an underlying debt has been discharged in bankruptcy, there are no proceeds available to which a perfected hospital lien can attach. It relies on the fact that Coran included Alegent's lien on $10,120.32 in Schedule F of his bankruptcy petition. Schedule F lists those creditors holding unsecured nonpriority claims. Alegent was among the parties who were served with notice of Coran's discharge in bankruptcy. American Family claims that since Alegent sought and obtained relief in the bankruptcy court but did not object to the discharge of Coran's debt, Alegent's lien is void as a matter of law.

Alegent asserts that it did not seek to collect a debt against a patient who had filed and been discharged in bankruptcy; rather, it sought to enforce a hospital lien against American Family. Alegent argues that American Family was on notice that Alegent had a lien but failed to protect the lien by paying the settlement proceeds directly to Coran and his attorney. Alegent claims that its hospital lien remained valid despite the bankruptcy filing.

Neb. Rev. Stat. § 52-401 (Reissue 1998), which governs hospital liens, states:

> Whenever any person employs a . . . hospital to perform professional service or services of any nature, in the treatment of or in connection with an injury, and such injured person claims damages from the party causing the injury, such . . . hospital . . . shall have a lien upon any sum awarded the injured person in judgment or obtained by settlement or compromise on the amount due for the usual and customary charges of such . . . hospital applicable at the times services are performed . . . .
>
> In order to prosecute such lien, it shall be necessary for such . . . hospital to serve a written notice upon the person or corporation from whom damages are claimed that such . . . hospital claims a lien for such services and stating the amount due and the nature of such services . . . .

■ The parties here do not question the attachment, perfection, or amount of the lien. In *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 475 N.W.2d 901 (1991), this court held that a hospital lien attaches upon admission of the patient to the hospital for treatment. The lien in this case attached when Coran was admitted to Alegent for medical treatment. American Family's refusal to honor the lien is based on its assertion that no proceeds are available for the perfected lien to attach to, since the underlying debt has been discharged in bankruptcy. This argument has not been adopted by other courts.

In a case with similar facts, *Filker v. Honda Motor Co., Ltd.*, 87 Ill. App. 3d 865, 409 N.E.2d 495, 42 Ill. Dec. 880 (1980), the court held that a hospital was entitled to enforce its lien subsequent to a bankruptcy because the hospital's security interest was not affected by the bankruptcy. " 'A discharge in bankruptcy does not affect, release, or discharge any securities or valid liens on property of the bankrupt which were in existence prior to the petition or adjudication in bankruptcy.' " *Id.* at 867, 409 N.E.2d at 496, 42 Ill. Dec. at 881. The court held that the classification of a creditor on a bankruptcy plaintiff's schedule of creditors is not conclusive as to the creditor's status.

In *Filker*, the plaintiff received medical treatment following a motorcycle accident and was discharged from the hospital with unpaid bills in excess of $25,000. The hospital filed and perfected a hospital lien under state law. The plaintiff filed a personal injury

action against the motorcycle company and subsequently filed for bankruptcy. His debts were discharged in bankruptcy, and he then recovered a judgment of more than $186,000 in the personal injury action. The lower court allowed the hospital's petition to enforce its lien, and the plaintiff appealed.

The plaintiff in *Filker* asserted that the hospital was an unsecured creditor whose debt was discharged in bankruptcy, barring its action to recover on the debt. The appellate court disagreed and held that perfection of the lien made the debt a secured one under state law. The court stated that a discharge in bankruptcy is personal to the bankrupt and " 'does not act as a release of liens or security interests in property owned by him. Accordingly, a creditor holding a security interest need not proceed in bankruptcy court but may rely on his security and enforce his rights against it in any court of competent jurisdiction.' " *Filker*, 87 Ill. App. 3d at 867, 409 N.E.2d at 496, 42 Ill. Dec. at 881, quoting *Avco Finance Co. v. Erickson*, 132 Ill. App. 2d 868, 270 N.E.2d 111 (1971).

Several bankruptcy courts have also upheld the validity of hospital liens. In *In re Innis*, 181 B.R. 548 (N.D. Okla. 1995), a hospital executed a lien for hospital charges incurred by an accident victim in the amount of $223,345.31. The insurer settled the victim's claim for $40,000. The victim and his attorney both knew of the hospital lien and that it had not been released or satisfied before the victim filed for bankruptcy relief. On Schedule C, the victim listed his interest in personal injury proceeds as exempt. The hospital did not file an objection to the exemption, but filed a complaint in bankruptcy court.

The *In re Innis* court found that under federal law, the personal injury settlement proceeds, even though declared exempt, remained liable for the hospital debt to the extent it was secured by the hospital lien. The court also reviewed state law and found that under both laws, "a hospital lien . . . is enforceable against personal injury proceeds under $50,000.00, notwithstanding exemption of such proceeds under [federal bankruptcy law]." *Id.* at 551.

The U.S. Bankruptcy Court for the District of North Dakota has also held that a hospital lien which was in effect against a debtor before he filed for bankruptcy relief was valid. See *In re Dueis*, 130 B.R. 83 (D.N.D. 1991). The lien was unaffected by

the bankruptcy filing, and the court found that the hospital could pursue foreclosure of its lien under state law.

■ The situation presented in the case at bar has not previously been considered by this court. However, in *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 287, 475 N.W.2d 901, 907 (1991), we held:

> Upon perfection of a lien by a hospital, a duty arises on the part of the tort-feasor's insurer not to impair the hospital's rights under that lien. If such an insurer settles directly with the injured party despite the existence of a perfected hospital lien, it has breached that duty and is liable directly to the hospital.

The U.S. District Court for the District of Nebraska has adopted the *West Neb. Gen. Hosp.* holding. See *Bryan Memorial v. Allied Property and Cas. Ins.*, 163 F. Supp. 2d 1059 (D. Neb. 2001). The federal court noted that in such a case, the hospital needs to prove only that "it had a perfected hospital lien under Neb.Rev.Stat. § 52-401, the amount of that lien, and that [the insurer] impaired that lien." *Bryan Memorial*, 163 F. Supp. 2d at 1066.

No question has been raised concerning whether Alegent's lien was properly perfected or as to the amount of the lien. It has been demonstrated that American Family impaired the lien by settling directly with Coran via his attorney and by issuing the settlement check payable to them, without including Alegent.

American Family's reliance on *Satsky v. U.S.*, 993 F. Supp. 1027 (S.D. Tex. 1998), is misplaced. In *Satsky*, a hospital sought to recover for expenses incurred in treating an accident victim. The patient had an insurance policy which served as a prepaid health care plan. The hospital had agreed to accept the compensation set forth in the plan as payment in full for all hospital services provided to those insured under the plan. The hospital collected $42,300 from the insurer for services rendered and then filed a hospital lien for an additional $76,729.05, the amount by which the charges for treatment exceeded the amount paid by the insurer under the plan.

The federal district court found that the lien was barred because the hospital had agreed to accept payment as provided in the plan. American Family suggests that *Satsky* is analogous

because there was no debt and therefore no lien. The *Satsky* court had noted the "intrinsic reality that without a debt, a lien is purely illusory." *Id.* at 1030. However, American Family's reasoning is incorrect because the facts in *Satsky* are dissimilar. The hospital in *Satsky* had agreed to accept partial payment under the terms of an agreement with the insurance company and, therefore, had received all the payments to which it was entitled.

In the case at bar, Alegent has received nothing in return for the costs it incurred while treating Coran. There is no evidence of an agreement between American Family and Alegent stating that Alegent would accept an amount less than the actual charges. The hospital's lien attached prior to the bankruptcy filing and was unaffected by Coran's discharge in bankruptcy. Since American Family settled directly with Coran despite the existence of Alegent's perfected hospital lien, American Family breached its duty to Alegent not to impair Alegent's rights under its lien, and American Family is directly liable to Alegent.

American Family's second argument suggests that federal law prohibits the imposition of a hospital lien against a beneficiary's liability insurance settlement for Medicare-covered services. This assignment of error is without merit.

There is no evidence that Coran was eligible for Medicare, which is a program with a different purpose and different standards than Medicaid. See *Evanston Hosp. v. Hauck*, No. 92 C 732, 1992 WL 205900 (N.D. Ill. 1992), *affirmed* 1 F.3d 540 (7th Cir. 1993), *cert. denied* 510 U.S. 1091, 114 S. Ct. 921, 127 L. Ed. 2d 215 (1994). According to DHHS, Coran became eligible for Medicaid on November 1, 1996, and he was never eligible for Medicare during the relevant time period.

American Family cites to 42 C.F.R. § 411.54 for the proposition that a health care provider "[m]ay not bill the liability insurer nor place a lien against the beneficiary's liability insurance settlement for Medicare covered services." American Family asks us to rely on the affidavit of Coran's attorney, in which he stated that Coran was a "Medicaid eligible beneficiary and all the services upon which Alegent makes claim were Medicaid covered services." The attorney states that it was his judgment that the federal regulation was dispositive of Alegent's claim. In its brief, American Family states that one of Coran's medical bills from

another provider was paid pursuant to the "Medicare DRG's." See brief for appellant at 8. In the attorney's affidavit, he stated that the bill reflected Medicaid adjustments. While American Family may have relied upon Coran's attorney's statements, such statements have no bearing on our determination of this issue.

Apparently, American Family considers the Medicare and Medicaid programs to be interchangeable. American Family asks this court to apply the federal regulation concerning Medicare to "Medicare/Medicaid." Brief for appellant at 9. However, the regulation refers only to Medicare. As the court noted in *Evanston Hosp.*, the two programs are separate and governed by different statutes. "Federal Medicare enactments do not provide any mandates for state Medicaid practices. Plaintiff's attempt to treat a Medicare provision as part of the Medicaid statute is not appropriate." *Evanston Hosp.*, 1992 WL 205900 at *2.

Medicare and Medicaid are separate and distinct programs, and whether Coran was eligible for either has no effect on Alegent's lien, which was enforceable. Alegent did not violate federal law in attempting to obtain payment for its services to Coran.

When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Eyl v. Ciba-Geigy Corp.*, 264 Neb. 582, 650 N.W.2d 744 (2002). We find that the district court's conclusion was correct.

## CONCLUSION

American Family settled directly with Coran despite the existence of Alegent's perfected hospital lien. Thus, American Family is directly liable to Alegent for American Family's breach of its duty not to impair Alegent's rights under the lien. The record does not support a finding that Coran was eligible for Medicare or that Alegent violated federal law by attempting to recover its expenses through the filing of a lien.

The district court correctly found that Alegent had a valid and enforceable lien in the amount of $10,120.32. The judgment is affirmed.

AFFIRMED.

HENDRY, C.J., participating on briefs.