IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

PANHANDLE COLLECTIONS V. JACOBSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

PANHANDLE COLLECTIONS, INC., APPELLANT,

V.

DOUGLAS JACOBSON, APPELLEE.

Filed May 2, 2017.    No. A-16-459.

Appeal from the District Court for Dawes County: TRAVIS P. O'GORMAN, Judge. Affirmed.

Katy A. Reichert, of Chaloupka, Holyoke, Snyder, Chaloupka & Longoria, P.C., L.L.O., for appellant.

No appearance for appellee.

MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Panhandle Collections, Inc. (Panhandle) appeals from an order of the district court for Dawes County in favor Douglas Jacobson. Chadron Community Hospital (the hospital) provided services to Jacobson. The hospital assigned Jacobson's account for medical expenses to Panhandle for collection. On appeal, Panhandle asserts that the court erred in finding no contract existed and denying its motion for new trial or to alter or amend the judgment. Because we find no error, we affirm.

### BACKGROUND

On May 11, 2015, Panhandle filed a complaint against Jacobson in the district court for Dawes County, alleging that Jacobson owed a total of $53,723.07, including principal and interest, for certain goods and services provided by the hospital at the request of Jacobson. Panhandle

alleged that it had made demand upon Jacobson for payment, which had been refused. Jacobson filed an answer denying the allegations in the complaint.

On March 17, 2016, a trial was held before the district court. Sandra Summers, business manager for the hospital, and Jacobson were the only witnesses to testify. Exhibits admitted into evidence included 11 itemizations of services provided to Jacobson, dated October 2, 2009 through July 27, 2012. Other exhibits consisted of a summary of Jacobson's account with the hospital, the assignment to Panhandle and Summers' corresponding affidavit, Jacobson's letter to the hospital regarding his account, and a letter from Summers to Jacobson's attorney.

Summers testified about Jacobson's bill for services and her interactions with Jacobson regarding his accounts. Summers authenticated the exhibits showing the dates of services provided to Jacobson, the amount of charges incurred, including their reasonableness, the payments made by Jacobson, and the amounts remaining due. Jacobson stipulated at trial to receiving the services and did not contest the amount or the fairness of the charges.

The evidence shows that the hospital provided goods and services to Jacobson in the form of medical care on multiple occasions between October 9, 2009 and July 27, 2012. The total charge for all services provided was $44,542.54. Jacobson received an itemized billing statement following each visit to the hospital. Jacobson made sporadic small payments to the hospital from October 2009 through April 2014. The majority of these payments were between $5 and $50.

Summers testified that the hospital often enters into verbal agreements with patients regarding the payment of their bills, which she claimed occurred in this case. Summers indicated the basis of this oral agreement with Jacobson was her conversations with him in which he offered to pay small payments, and the hospital's acceptance of this arrangement.

On August 15, 2013, Jacobson sent a letter to the hospital applying for the charity care program. The charity care program is an initiative through which patients can apply for bill forgiveness on the basis of a financial crisis. Jacobson's letter stated: "I'm not asking that you write my obligation to [the hospital] off. I am just asking that you accept small monthly payments like I was making ($5-$10) until things in my life get better." Jacobson's letter included an explanation of his poor financial situation and available assets. Jacobson requested that the hospital accept his small monthly payments and not send the matter to a collection agency. According to Summers, there were payments made by Jacobson after this letter, which the hospital accepted.

Summers further testified that in January 2014, Jacobson entered into an oral agreement regarding payment of his account with Harold Krueger, CEO of the hospital, however, she did not testify to the terms of this agreement. Jacobson denied entering into a payment agreement with Krueger. The hospital assigned Jacobson's account to Panhandle in October.

After the account was sent to Panhandle for collection, Summers wrote a letter to Jacobson's attorney, in response to the attorney's correspondence with Panhandle. Summers advised that there was never an agreement to write off any debt for Jacobson. The letter went on to state that Jacobson applied for charity care in 2012 and again in 2013, but was denied. Despite this, Summers stated that Jacobson continued to make monthly payments through 2012 and into 2013, but that the payments became more sporadic and completely dropped off in April 2014. Summers indicated that Jacobson made an agreement with Krueger in January 2014 to pay $100 a month, which he did in January, March, and April. She further stated that Jacobson also made an

agreement with Krueger that when he received money from his father's estate, he would "be in to discuss a payoff." Summers stated that since Jacobson's last payment in April 2014 the hospital had not heard from Jacobson regarding settlement or future payments, although the hospital was always more than willing to work with him and accept monthly payments.

Following completion of the evidence, the parties' attorneys made closing arguments. Pertinent to the resolution of this appeal, Panhandle's attorney argued that Jacobson breached his oral agreement with the hospital to pay his accounts that are due and owing. Counsel further stated:

> The services were rendered in 2009 and 2010, 2011 and 2012 and some of those they were collecting on the bill itself, obviously, would be outside the statute of limitations. But we are not collecting on the bill, we are collecting on the agreement between Mr. Jacobson and the hospital to make small monthly payments. That is the contract that Mr. Jacobson has breached.

> Now, the amount that he was to pay is obviously the services rendered 2009, 2010 and so forth, but the agreement itself is his - is an agreement that was made in 2014 so we are within the statute of limitations to collect on that particular agreement. . . .

On March 23, 2016, the court entered an order in favor of Jacobson. The court found that Panhandle failed to carry its burden to prove the existence of a validly enforceable oral contract and that its terms and requirements were definite and certain. The court stated that while Panhandle asserts an agreement was reached in January 2014 that Jacobson would make "small payments" towards his bill, no further details were provided. The court found no evidence of an agreement regarding the amount of the "small payments," when such payments would be made, or any other terms. The court acknowledged that while Jacobson made certain payments, no consistency was demonstrated in the amount or timing of payments. Further, the court noted that while Jacobson's August 2013 letter shows him offering to make $5-$10 payments, there is no evidence this offer was accepted by the hospital. Rather, the court noted Summers' testimony that the agreement was not reached until January 2014. Jacobson denied entering into an agreement in January 2014. Based on the evidence, the court held Panhandle failed to carry its burden to prove the existence of a validly enforceable oral contract, dismissing the matter with prejudice.

On April 4, 2016, Panhandle filed an amended motion for new trial or to alter or amend. The motion alleged, in part, that the decision was contrary to law, the evidence at trial proved the allegations made in the complaint by a preponderance of the evidence, and Panhandle had obtained newly discovered evidence. On April 12, 2016, a hearing was held on the motion for new trial or to alter or amend. The court received a new exhibit which was an affidavit of Panhandle's attorney, with a list of payments by Jacobson, provided to Panhandle's attorney by the hospital on April 8.

On April 13, the court entered an order denying the motion for new trial or to alter or amend, finding insufficient evidence to support the motion.

Panhandle subsequently perfected this appeal.

## ASSIGNMENTS OF ERROR

Panhandle assigns, restated, that the district court erred in (1) finding no contract existed between the hospital and Jacobson and dismissing the complaint, and (2) denying Panhandle's motion for new trial or to alter or amend judgment.

## STANDARD OF REVIEW

A claim that the parties created an enforceable contract generally presents an action at law. *City of Scottsbluff v. Waste Connections of Neb., Inc.*, 282 Neb. 848, 809 N.W.2d 725 (2011). In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013). An appellate court will not reevaluate the credibility of the witnesses or reweigh testimony but will review the evidence for clear error. *Id*. Similarly, the trial court's factual findings in a bench trial of an action at law have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Id*. Conversely, an appellate court independently reviews questions of law decided by a lower court. *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012).

An appellate court reviews a denial of a motion for new trial or, in the alternative, to alter or amend the judgment, for an abuse of discretion. *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012).

## ANALYSIS

### EXISTENCE OF CONTRACT

Panhandle argues that the district court erred in finding that no contract existed between the hospital and Jacobson. Panhandle asserts that its action for recovery of Jacobson's debt was based upon an implied contract arising from the furnishing of services by the hospital, and the resulting implied promise by Jacobson to pay.

A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract. *MBH, Inc. v. John Otte Oil & Propane, Inc.*, 15 Neb. App. 341, 727 N.W.2d 238 (2007) (citing *Houghton v. Big Red Keno*, 254 Neb. 81, 574 N.W.2d 494 (1998)). To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances. *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011).

An implied contract arises where the intention of the parties is not expressed in writing but where the circumstances are such as to show a mutual intent to contract. *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014); *City of Scottsbluff v. Waste Connections of Neb., supra*. Evidence of facts and circumstances, together with the words of the parties used at the time, from which reasonable persons in conducting the ordinary affairs of business, but with special reference

to the particular matter on hand, would be justified in inferring such a contract or promise, is sufficient. *Linscott v. Shasteen, supra*. The determination of the parties' intent to make a contract is to be gathered from objective manifestations--the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction. *Id*. If the parties' conduct is sufficient to show an implied contract, it is just as enforceable as an express contract. *Id*.

Panhandle argues on appeal that an implied contract was created by virtue of Jacobson's implied promise to pay the reasonable value of the medical goods and services he received from the hospital. Panhandle cites to the cases of *Lanphier v. Omaha Public Power Dist.*, 227 Neb. 241, 248, 417 N.W.2d 17, 22 (1987) (where services are furnished to a party and knowingly accepted by him, the law implies a promise on his part to pay the reasonable value of the services), and *AMISUB (Saint Joseph Hosp.) v. Allied Prop. & Cas. Ins. Co.*, 6 Neb. App. 696, 708, 576 N.W.2d 493, 501 (1998) (rendering of hospital services creates an implied contract between hospital and person being given medical care).

In this case, the complaint was framed as a collection action of the unpaid balance of an account for services provided by the hospital to Jacobson. As such, it sought recovery for an implied contract. However, the position of Panhandle at trial was that it was not collecting on the account; rather it was seeking to collect on the oral agreement between Jacobson and the hospital to make small monthly payments. Thus, Panhandle itself framed the issue at trial as one of breach of the oral agreement to make monthly payments as opposed to breach of an implied contract to pay for services rendered by the hospital. Panhandle cannot now complain that the district court erroneously considered the case as one of breach of an oral contract as opposed to breach of an implied contract. See *In re Estate of Jeffrey B.*, 268 Neb. 761, 688 N.W.2d 135 (2004) (party cannot complain of error which that party has invited the court to commit). Even when a party does not move for leave to amend pleadings, a court may constructively amend pleadings on issues not plead in order to render a decision consistent with the trial. *Blinn v. Beatrice Cmty. Hosp. & Health Ctr., Inc.*, 270 Neb. 809, 708 N.W.2d 235 (2006). This effectively occurred in the present case, with the district court considering whether a breach of oral contract occurred based upon the evidence and arguments presented by Panhandle at trial.

Panhandle now argues in its brief that the issue of the oral contract is "not necessarily relevant for purposes of whether or not [Panhandle] proved its complaint." Rather, it argues that the oral contract is relevant to determine when the statute of limitations began to run. We reject this argument. Panhandle cannot have it both ways; it chose at trial to abandon collection on the account and instead to pursue recovery for Jacobson's breach of the alleged contract to make small monthly payments.

Further, we find no error in the district court's determination that Panhandle failed to prove the existence of an oral contract between the parties for Jacobson to make small monthly payments, as asserted by Panhandle at trial. There was no evidence about the terms of an oral contract such as a definite amount of monthly payments, when said payments were to be made, whether interest was to accrue on the balance, etc. While Summers testified that the hospital accepted Jacobson's small and sporadic monthly payments, she did not provide any more definite testimony about the terms of any agreement. Her only testimony about Krueger's alleged oral contract with Jacobson

was that she had been advised that an agreement regarding payment of the account had been entered into in January 2014. She did not testify further about the terms of this alleged agreement and her letter to Jacobson's counsel regarding this alleged agreement is not competent evidence to support the existence of an oral contract entered into in January 2014. Jacobson denied entering into any agreement in January 2014. We agree with the district court that the hospital failed to establish the existence of an oral agreement regarding a payment plan by Jacobson in that the terms of the agreement were not definite and certain.

We conclude that the district court did not err in finding that Panhandle failed to prove the existence of an oral contract. The district court did not err in failing to find that an implied contract existed between the hospital and Jacobson, as such theory was not pursued at trial.

MOTION FOR NEW TRIAL OR TO ALTER OR AMEND

Panhandle asserts that the district court abused its discretion in failing to order a new trial or to alter or amend the judgment. Panhandle's argument in this regard is based upon the same arguments which we have considered and rejected above. Thus, we conclude that the district court did not abuse its discretion in overruling Panhandle's post-trial motion. Additionally, the alleged newly discovered evidence, listing small and sporadic payments by Jacobson during the period at issue, does not alter our analysis or conclusion.

CONCLUSION

Upon our review, we find that the district court did not err in its dismissal of the complaint brought by Panhandle against Jacobson, nor in its denial of a motion for new trial. Accordingly, we affirm.

AFFIRMED.